UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE EX PARTE APPLICATION OF SBK
ART LLC,

                Petitioner,

for an order pursuant to 28 U.S.C §1782 to
conduct discovery for use in foreign
proceedings

CASE NO.: XX-XX-XXX

**MEMORANDUM OF LAW IN SUPPORT OF SBK ART LLC'S *EX PARTE*
APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER TO TAKE
DISCOVERY FROM AKIN GUMP STRAUSS HAUER & FELD LLP AND AKIN
<u>GUMP LLP FOR USE IN FOREIGN PROCEEDINGS</u>**

Robert S. Landy
Michael A. Piazza
Adam C. Yaeger
FORD O'BRIEN LANDY, LLP
275 Madison Avenue, 24th Floor
New York, New York 10016
Telephone: (212) 858-0040
Facsimile: (212 256-1047
rlandy@fordobrien.com
mpiazza@fordobrien.com

Counsel for Petitioner
SBK ART LLC

i

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION AND SUMMARY STATEMENT.....................................................1

BACKGROUND ...........................................................................................................5

    I.     The Fortenova Group .......................................................................................5

    II.    SBK ART's Ownership in the Group and its Sale to Alketbi..........................5

    III.   Lobbying sanctions against SBK ART and further Corporate Changes.........6

    IV.   Sale of MidCo ..................................................................................................9

    V.    Akin's connections with Fortenova Group .................................................12

    VI.   The Requested Discovery is For Use in the Foreign Proceedings ................13

ARGUMENT .................................................................................................................14

    A.  The Application Meets the § 1782 Statutory and Discretionary Factors. ...........15

        1.   Granting SBK ART's Ex Parte Application is Appropriate and Fair Under § 1782. .....15

        2.   SBK ART's Application Meets the Statutory Requirements of § 1782. ......................16

           a.  Akin  "Resides" or is "Found" in This District.......................................................17

           b.  The Requested Discovery is "For Use" in a "Foreign Proceeding." ....................17

           c.  SBK ART is an "Interested Person."....................................................................19

        3.   Discretionary Factors Weigh in Favor of SBK ART's Application............................20

           a.  Akin  is Not a Foreign Proceeding Participant. .....................................................21

           b.  The Foreign Tribunals are Receptive to U.S. Judicial Assistance. .......................21

           c.  The Application Does Not Circumvent the Rules of the Foreign Tribunals..........22

           d.  The Application is Narrowly Tailored to Avoid Unnecessary Burdens in Accordance with the Federal Rules Of Civil Procedure .......................................23

CONCLUSION .............................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
  793 F.3d 1108 (9th Cir. 2015) ................................................................................17

*Application of Gianoli Aldunate*,
  3 F.3d 54 (C.A.2 (Conn.),1993)..............................................................................20

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995).....................................................................................21

*Fund for Protection of Investor Rights in Foreign States Pursuant to 28 U.S.C. § 1782 for Order
Granting Leave to Obtain Discovery for use in Foreign Proceeding v. AlixPartners, LLP*,
  5 F.4th 216 (C.A.2 (N.Y.) 2021)..............................................................................21

*Gushlak v. Gushlak*,
  486 Fed.Appx. 215 (2d Cir.2012) ......................................................................15, 16

*In re Accent Delight International Ltd.*,
  791 Fed.Appx. 247 (C.A.2 (N.Y.) 2019) .............................................................22, 23

*In re Accent Delight International Ltd.*,
  869 F.3d 121 (C.A.2 (N.Y.), 2017)..........................................................................20

*In re Accent Delight Int'l Ltd.*,
  No. 16-MC-125 (JMF), 2018 WL 2849724 (S.D.N.Y. June 11, 2018)....................22

*In re Al-Attabi*,
  2021 WL 4027021 (S.D.N.Y. 2021).........................................................................17

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
  No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)...................17

*In re Application of Masters for an Ord. Pursuant to 28 U.S.C. §1782 to Conduct Discovery for
Use in a Foreign Proceeding*,
  315 F. Supp. 3d 269 (D.D.C. 2018) .........................................................................17

*In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to
Take Discovery from Dominique Levy, L & M Galleries* ............................................23

*In re Atvos Agroindustrial Investimentos S.A.*,
  481 F.Supp.3d 166, 176–77 (S.D.N.Y. 2020) .........................................................21

*In re Caratube,*
    730 F. Supp. 2d 101 (D.D.C. 2010) ............................................................21

*In re Del Valle Ruiz,*
    342 F.Supp.3d 448 (S.D.N.Y., 2018) ........................................................15

*In re del Valle Ruiz,*
    939 F.3d 520, 528 (2d Cir. 2019) ..............................................................17

*In re DiGiulian,*
    314 F. Supp. 3d 1 (D.D.C. 2018) ...............................................................22

*In re Ex Parte Application of Société d'Etude de Réalisation et d'Exploitation Pour le Traitement du Mais,*
    No. 13-mc-0266, 2013 WL 6164435 (E.D. Pa. Nov. 22, 2013) ................20

*In re FourWorld Event Opportunities Fund, L.P.,*
    No. 22 MISC. 316 (KPF), 2022 WL 17156111 (S.D.N.Y. Nov. 21, 2022) ............21

*In re Letter of Request from Crown Prosecution Service of the United Kingdom,*
    870 F.2d 686 (D.C. Cir. 1989) ...................................................................20

*In re Letter of Request from Supreme Court of Hong Kong,*
    138 F.R.D. 27 (S.D.N.Y. 1991) ..................................................................16

*In re O'Keeffe,*
    650 Fed.Appx. 83 (C.A.2 (N.Y.), 2016) ....................................................15

*In re of Lucille Holdings Pte. Ltd.,*
    No. 1:21-MC-99 (GMH), 2022 WL 1421816 (D.D.C. May 5, 2022) .......17

*In re Pishevar,*
    No. 21-MC-105, 2023 WL 2072454 (D.D.C. Feb. 17, 2023) ............17, 21

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.,*
    634 F.3d 557 (9th Cir. 2011) .....................................................................20

*In re Rivada Networks,*
    230 F. Supp. 3d 467 (E.D. Va. 2017) ........................................................15

*In re Veiga,*
    746 F. Supp. 2d 8 (D.D.C. 2010) ...............................................................23

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004) ..............................................................15, 20, 21, 22

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
 895 F.3d 238 (2d Cir. 2018).................................................................22

*Kulzer v. Esschem, Inc.*,
 390 F. App'x 88 (3d Cir. 2010) ............................................................20

*Matter of de Leon*,
 No. 19-MC-0197 (TSC), 2020 WL 1047742 (D.D.C. Mar. 4, 2020)..................................16, 20

*Mees v. Buiter*,
 793 F.3d 291 (2d Cir. 2015).......................................................17, 20, 23


Statutes and Rules:

28 U.S.C. § 1782 ................................................................... passim.

28 U.S.C. § 1782(a) ...............................................................16

## INTRODUCTION AND SUMMARY STATEMENT

Gathering evidence to prove a tortious scheme and the acts taken to further the scheme is inherently difficult. By its very nature, the wrongdoing is often committed using deceit and concealment from the party that is the target of the wrongdoers' efforts. This application for discovery seeks to assist the applicant SBK ART LLC ("SBK ART" or "Applicant") to discover and expose facts and evidence that demonstrate the existence of an unlawful scheme to cause damages to SBK ART and ultimately deprive it of its ownership rights and benefits in a major food and retail company based in Zagreb, Croatia, called Fortenova Grupa d.d. ("Grupa"). Grupa, according to its financial reports, has annual revenues that exceed 5 billion Euro. It is one of the largest food conglomerates in Europe and the largest private employer in southeastern Europe.[1]

Grupa is held through a series of Dutch holding companies with the entity Fortenova Group STAK Stichting ("STAK"), a Dutch foundation, on top of the structure.[2] SBK ART, which used to be a subsidiary of Sberbank of Russia ("Sberbank"), was acquired by H.E. Saif Jaffar Suhail Markhan Alketbi ("Mr. Alketbi") on October 31, 2022. It is the rightful owner of a 41.82% interest in Grupa through the depositary receipts issued by STAK ("DRs"). With some of the issued DRs of STAK being in escrow, SBK ART owns in total approximately 42.51% of the voting rights. As such SBK ART is the largest minority owner of Grupa.

---

[1] See Exhibit A to the Declaration of Michael A. Piazza (the "Piazza Decl.") which is submitted as Appendix 1 to this Memorandum of Law (excerpt from the Fortenova Grupa Web page at https://www.fortenova.hr/en/about-us/).

[2] This series of Fortenova companies will be collectively referred to herein as the "Fortenova Group." This chain of Dutch companies that ultimately own Grupa is visually set forth in a flow chart attached as Exhibit B to the Piazza Decl.

The second-largest minority owner of Grupa is a Maltese company, Open Pass Limited ("Open Pass"), with its interest being approximately 28% in 2022. The key ultimate owner of Open Pass is a Croatian tycoon, Mr. Pavao Vujnovac.

The legal proceedings in connection with which SBK ART seeks the current disclosure relate to SBK ART's claim that Open Pass – together with its Croatian owners and the Croatian management of Fortenova Group, which was installed by Open Pass – devised and perpetrated a scheme to move all valuable assets of the Fortenova Group to a new entity owned and controlled by Mr. Vujnovac at a fraction of its true, fair value.

The scheme involved lobbying by the management of Fortenova Group and Mr Vujnovac for illegitimate sanctions against SBK ART, baselessly asserting that SBK ART remains within the control of Sberbank, thereby ignoring that Mr. Alketbi had acquired the company. Once the sanctions were introduced the management of the Fortenova Group used this to justify a deprival of SBK ART's voting rights and implementation of the rest of the scheme which included (1) the change of corporate governance in Fortenova Group in favour of Open Pass; (2) conducting of a sham auction process in relation to one of Grupa's Dutch holding companies, Fortenova Group MidCo B.CV. ("MidCo") and hence essentially of Grupa; (3) the preparation of a misleading business plan that supported a severely depressed value for the company; and (4) the sale of MidCo (and hence Grupa) for a depressed price to Open Pass's company and hence Mr Vujnovac, thereby maliciously acquiring the value of SBK ART's 42% interest.

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████

Due to the international and sophisticated nature of the tortious actions by the wrongdoers, the collection of evidence supporting various aspects of SBK ART's claims is complicated.

SBK ART, therefore, respectfully seeks this Court's assistance in gathering the evidence needed to further expose and remedy this massive tort. Specifically, the Applicant files this *ex parte*[3] application (the "Application") for judicial assistance pursuant to 28 U.S.C. § 1782 ("Section 1782") authorizing SBK ART to take non-party discovery (the "Requested Discovery") from Akin Gump Strauss Hauer & Feld LLP and "Akin Gump LLP" ("Akin") for use in (1) a pending lawsuit before the General Court of European Union by SBK ART against the Council for the European Union seeking to annul the EU's December 16, 2022 decision to add SBK ART to its list of sanctioned entities (the "EU Action"); (2) a pending lawsuit filed in the Civil Court of Malta (the "Malta Action") for damages caused to SBK ART by the approval of the changes to the corporate governance in Fortenova Group in favor of Open Pass and its Croatian owners (the "Corporate Changes"); and (3) a potential new claim that SBK ART intends to file in the Netherlands or another foreign court outside the United States to seek damages caused by the most recent sale of MidCo (the "Contemplated Proceedings," which together with the EU Action and the Malta Action are hereinafter referred to as the "Foreign Proceedings").

---

[3] As discussed *infra*, at this stage, a Section 1782 application is often and properly heard *ex parte* in full compliance with due process. Once the requested subpoenas are issued pursuant to the application and served upon the responding party, the responding party then has the opportunity to move to quash the subpoenas and object to their scope and/or burden.

The information kept by Akin in relation to Fortenova Group, including in relation to actions of its management, Open Pass and any other entities, concerning the transfer of control over the group to Open Pass, the analysis of the transfer of SBK ART to Mr. Alketbi by Fortenova Group, the lobbying towards an EU listing of SBK ART and any other use of this situation in favor of Open Pass will provide further evidence of the scheme to SBK ART.

The requested relief (i.e., discovery from non-party Akin for use in the EU Action, Malta Action and the Contemplated Proceedings by SBK ART regarding the Fortenova Group, the individuals and entities that own and/or will own Grupa, and others that aided and assisted in the scheme) is fully justified and supported by Section 1782.

While Akin is a law firm, and will be in possession of privileged material, it will also be in possession of substantial non-privileged material, including:

(i)    All documents relating to its lobbying efforts in the United States and the European Union to urge those bodies to impose illegitimate sanctions on SBK ART;

(ii)   All documents relating to its formal opinion letter in relation to the acquisition of SBK ART by Mr. Alketbi;

(iii)  Its communication in relation to Mr. Alketbi and/or SBK ART and Fortenova Group with parties other than its clients, including other corporate service providers involved in the transactions; and

(iv)   Any client communications that concern business matters and are not related to legal advice, or that may be disclosable under the crime-fraud exception to the attorney-client privilege.

4

## BACKGROUND

### I.  The Fortenova Group

Fortenova Group is a major agricultural, food production, and retail conglomerate with operations in Croatia and several other former Eastern European Bloc countries. It was created in 2019 as a result of financial restructuring of a Croatian group of companies, called Agrokor, which had been on the verge of bankruptcy in 2017.

The creditors of Agrokor, including Sberbank, became DR holders of STAK and it was agreed that all important decisions regarding the governance, financing, and material business matters of the Fortenova Group had to be approved at meetings of the DR Holders. Any decisions by the DR Holders would then be implemented by the various entities within the corporate structure, including the Croatian operational entity, Grupa. The DR Holders were thus given a serious level of control of the Fortenova Group. Sberbank placed its holdings in a special purpose vehicle – SBK ART.

### II.  SBK ART's Ownership in the Group and its Sale to Alketbi

SBK ART is the owner of 41.82% of DRs. It was initially owned by Sberbank and became subject to various sanctions in spring-summer 2022 as a subsidiary of its blocked parent.

On October 31, 2022, during the period for winding down of its operations in the EU, Sberbank sold SBK ART to Mr. Alketbi, who is a reputable and successful investor based in the United Arab Emirates ("UAE").

Mr. Alketbi is a former Director General of The Office of His Highness, the Crown Prince of Dubai, founder of D-One Investment and has a track record of investments in various sectors, including real estate, healthcare, and technology, both in the UAE and internationally.

### III.  Lobbying sanctions against SBK ART and further Corporate Changes

5

As a result of the acquisition of SBK ART by Mr. Alketbi, who was and continues to be free from any sanctions, SBK ART also ceased to be subject to any sanctions related to Sberbank.

Following the acquisition, Mr. Alketbi and SBK ART approached the management of Fortenova Group, providing information on the acquisition and invitations to meet and discuss the future development of the Fortenova Group. The management of the Fortenova Group, however, stated that it could not recognize the transfer of SBK ART from Sberbank to Mr. Alketbi, claiming that it needed to conduct a *"thorough"* Know Your Client ("KYC")[4] procedure first. For that purpose, it submitted a list of KYC questions to SBK ART.

On 6 December 2022, Mr. Alketbi and SBK ART provided detailed responses to STAK's KYC questions, including an opinion of a reputable European law firm confirming that Mr. Alketbi's acquisition of SBK ART did not breach EU sanctions.

On 14 December 2022, STAK submitted a second round of KYC questions to SBK ART, to which SBK ART immediately started preparing the responses.

On the same day, SBK ART received documents that had been submitted by STAK to an Amsterdam court, in which STAK contested SBK ART's right to exercise its voting rights in STAK. The documents included, among other things, an opinion on the letterhead of Akin Gump Strauss Hauer & Feld issued on behalf of Akin Gump LLP (the "Akin Opinion").[5]

The Akin Opinion stated, among other things, that the documents provided by SBK ART and Mr. Alketbi were:

---

[4] KYC stands for "Know Your Customer" and is a common term used as shorthand in compliance for background checks and investigations.
[5] The Akin Opinion is attached as Exhibit 2 to the Declaration of Dr. Gabriel Lansky ("Lansky Decl."). The Lansky Decl. is submitted as Appendix 3 to this Memorandum of Law.

(i)      "insufficient to confirm that the transaction under review [has] resulted in SBK [ART] no longer being subject to the asset freeze restrictions imposed on its purported (former) parent company Sberbank"; and

(ii)     "indicative of criminal sanctions breaches having been committed by EU persons in relation to the transaction under review".

The Akin Opinion also set out what kind of further information was allegedly required to further analyze the acquisition of SBK ART by Mr. Alketbi from sanctions perspective. This information was essentially what STAK had requested from SBK ART and Mr. Alketbi as part of the second round of KYC questions referred to above. It is hence clear that STAK had been advised by one of Akin's offices regarding the acquisition of SBK ART by Mr. Alketbi and SBK ART's voting rights in STAK, and had instructed Akin to assist in a plan to deny Mr. Alketbi his voting and ownership rights.

Meanwhile, Fortenova Group and Open Pass lobbied the Croatian government to push in the European institutions for SBK to be sanctioned. Indeed, Croatian officials later expressly admitted that they had asked for SBK ART to be sanctioned.[6]

██████████████████████████████████████████

██████████████████████████████████████████

On 16 December 2022, i.e. only two days after SBK ART received the second round of KYC questions as well as the documents that had been submitted by STAK to an Amsterdam court, including the Akin Opinion, the Council of the European Union included SBK ART in the EU sanctions list with the following reasoning:

---

[6] See Exhibit C to the Piazza Decl., a screen shot of the article available at https://www.novilist.hr/novosti/ruska-tvrtka-i-dalje-drzi-udjele-u-fortenovi-i-sada-je-pod-sankcijama-nikakav-novac-nije-isplacen-iz-emirata-prodaja-je-bila-fiktivna/

"*SBK ART LLC is a company in the Russian Federation associated with Sberbank.*
*SBK ART LLC was established as a subsidiary of Sberbank before it was listed, for*
*the purpose of holding Sberbank's interests in the Fortenova group. Sberbank*
*retains effective control over SBK ART LLC notwithstanding the purported transfer*
*of its shares to a businessman in the United Arab Emirates.*
*SBK ART LLC is therefore associated with Sberbank, which is listed as an entity*
*financially supporting the Government of the Russian Federation and as an entity*
*involved in an economic sector providing a substantial source of revenue to it*".

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

Importantly, however, the leaking of documents and lobbying effort was completely inconsistent with the interest of the Fortenova Group that was being emphasized by Fortenova Group's management since at least August 2022 up to now. According to the management, the existence of sanctioned DR holders in their capital structure significantly complicated Fortenova Group's relationships with various counterparties and created risks for its ability to restructure its USD 1 bn obligations. Thus, while the imposition of sanctions against Fortenova Group's largest stakeholder, SBK ART, was problematic for Fortenova Group, it was beneficial for Open Pass in its efforts to take over the company without paying for it.

Upon introduction of the EU sanctions against SBK ART, Fortenova Group's management together with Open Pass used the above sanctions to claim that SBK ART is not

entitled to vote at the DR Holders meetings. They immediately arranged for the approval of the Corporate Changes, including:

> (i)     changes of the voting thresholds making Open Pass a veto right DR Holder and the de facto deciding DR Holder; and
>
> (ii)    increasing the powers of the Grupa board of directors to approve Grupa's transactions from 50 million Euros to 500 million Euros without the need of any additional DR Holder authorization.

The changes were approved with the votes of Open Pass and despite the fact that two-thirds (2/3) of the minority DR Holders (i.e., without including Open Pass's vote) participating at the meeting voted against the Corporate Changes. The details of these circumstances are laid out in Paragraphs 10-31 of the Malta Action. (See Exhibit 1 to the Declaration of John Refalo ("Refalo Decl.")[7]

## IV.    Sale of MidCo

Soon after the Corporate Changes, the Croatian management of Grupa announced that they were launching a "change in its shareholding and capital structure" and would seek to "examine the interest of potential investors in the purchase of [MidCo]" under the pretext that sanctioned DR Holders continued to create difficulties for the operation of the Fortenova Group.[8]

---

[7] The Refalo Decl. is attached to this Memorandum of Law as Appendix 2.
[8] See April 26, 2023 Fortenova Group Press Release titled "The Fortenova Group is Launching Change of its Ownership and Capital Structure," a copy of which is attached to the Piazza Decl. as Exhibit D.

The same announcement stated that Grupa had engaged the U.S.-headquartered global investment bank Lazard Frères ("Lazard") "to conduct a sale process," and "to initiate a value discovery process by testing a prospective sale of 100% of the shares" of MidCo.[9]

Lazard conducted the sales process. However, it suffered from numerous deficiencies, including (i) abnormally short deadlines for potential purchasers to bid and conduct due diligence, (ii) an indication without further clarification that a EUR 1.1 billion loan would be payable by Grupa in September 2023 and that default was imminent (when in reality the restructuring of the loan was already well under way), and (iii) the fact that only a handful of potential investors were invited to provide offers.

In light of the above, it appears that Grupa was not really interested in obtaining any true and objective commercial offer. Rather, the goal was for the sales process to fail, in order to justify a fire-sale valuation for an insider transaction.  As intended, none of the few potential investors that were invited to provide offers expressed any interest in acquiring MidCo, which by itself is telling, since Grupa is one of the leading retailers in the EU.

Furthermore, while in May and June 2023 Mr. Alketbi and his business partners indicated an interest to purchase MidCo, they were not considered by Grupa and the Fortenova Group.[10]

Having achieved the goal of dooming the sales process from the start, Open Pass and its related entities and individuals then moved to their endgame, namely acquiring Grupa through MidCo at an artificially-depressed price while simultaneously getting rid of SBK ART and potentially all other remaining DR holders.

---

[9] *Id.*
[10] Exhibit E to the Piazza Decl.

Grupa announced to the public that after long negotiations with the largest non-sanctioned DR Holders (i.e., Open Pass), it decided that the best further solution for Fortenova Group would be as follows:

(1)     MidCo (which holds 100% of the shares of Grupa through another Dutch company, Fortenova Group HoldCo B.V.) would be sold to a new Dutch holding structure created by Open Pass for a price in the range of EUR 500 million to EUR 660 million;

(2)     Eligible, non-sanctioned DR Holders could maintain or increase their holdings via the new structure; and

(3)     Non-eligible, sanctioned DR Holders, above all SBK ART, should receive only an artificially low portion of proceeds of the sale of MidCo to this parallel structure, due to the artificially depressed price, and thus face a massive devaluation of their investment.

(See Piazza Decl. at Ex. F.).

To substantiate that the above structure and the artificially depressed price are reasonable, the CEO of the Grupa, Mr. Fabris Perusko, and other managers of the Fortenova Group engaged third party experts to opine on the proposed price for the sale of MidCo based on a distorted business plan. Subsequently, STAK moved to schedule the final DR meeting to get a rubber stamp approval of the MidCo transaction from the remaining non-sanctioned, voting DR Holders including Open Pass.

The DR Holders (whose votes were not rejected) approved the MidCo sale on December 19, 2023[11] (with the vote of Open Pass in favor of it) and TopCo concluded the transaction immediately thereafter, on December 28, 2023.

Subject to the completion of this transaction SBK ART will lose any ownership of MidCo and thus Grupa, while Open Pass will become the sole or at minimum the majority owner thereof.

The above actions by the conspirators are going to form the basis for the Contemplated Proceedings.

## V.     Akin's Connections with Fortenova Group

Apart from the fact that Akin issued the Akin Opinion, it has had several important connections with Fortenova Group:

(i)     Akin Gump LLP was engaged by Agrokor as an independent international legal adviser to assist from a general creditors' perspective in drafting and evaluating, analyzing and revising the creditor settlement and documents related thereto;

(ii)    Akin's offices were engaged by Fortenova Group companies on various occasions. For instance, Akin advised Fortenova Group in the sale of its frozen food business in 2021[12] and in connection with analyzing KYC documents related to Mr. Alketbi (see III above);

---

[11] While now approved, the transaction will not finally close until sometime in the second quarter of 2024 pursuant to the final terms of the deal.  See Piazza Decl. at Ex. G, excerpt from Fortenova Group Press release on December 19, 2023.

[12] https://www.akingump.com/en/insights/press-releases/akin-gump-advises-fortenova-in-euro615-million-sale-of-frozen-food-business-to-nomad-foods

(iii)     according to the term sheet in connection with the sale of MidCo, Akin Gump

LLC was referred to as legal counsel of TopCo. The same was also confirmed by

the front pages of some of the transaction documents also disclosed at the time;

(iv)     according to publicly available information Akin's group companies lobbied for

the Grupa in 2023[13].

In this context while Akin can argue that all its information in relation to Fortenova

Group matters is privileged and cannot be disclosed, this cannot be true because:

(i)     any of Akin's lobbying activities are not protected by privilege;

(ii)     ;

(iii)     due to its representation of STAK and/or TopCo, communications with Open

Pass or other third parties are not privileged.

## VI.     The Requested Discovery is For Use in the Foreign Proceedings

In the Foreign Proceedings, SBK ART alleges, or will allege, that it has been wrongfully

sanctioned and that all the actions taken by Open Pass and the Fortenova Group and its

management at least from and after June 2022 were designed to remove SBK ART from its

rightful ownership in the Fortenova Group.[14]   Therefore, it is critical for SBK ART to obtain

discovery from non-party sources such as Akin.

---

[13] https://www.opensecrets.org/federal-lobbying/clients/lobbyists?cycle=2023&id=F325543

[14] That the transaction is problematic at best and potentially a criminal fraud is further
demonstrated by ongoing scrutiny of the deal in Croatia.  Significantly, Croatian Member of
Parliament Nikola Grmoja recently highlighted potential criminal activity in connection with
the December 19th Transaction.  (*See* Piazza Decl. at Ex. H (January 8, 2024 article from
bneINTELLINEWS titled "Croatian opposition party claims Fortenova CEO helped local
tycoon take control of group." https://intellinews.com/croatian-opposition-party-claims-

Through its proposed subpoenas (Exs. J and K to the Piazza Decl.) SBK ART seeks the Requested Discovery, namely specific and discrete non-privileged information, documents, and testimony from Akin relating to the Fortenova Group, including the instruction given by STAK to Akin for advice in connection with the acquisition of SBK ART by Mr. Alketbi ███████ ██████████████████████████████████████████████████, any communications between Akin and Fortenova Group's representatives in relation to lobbying for sanctions to be imposed against SBK ART in the EU and/or in the USA or in relation to any other lobbying related to SBK ART, any other communications in relation to the takeover of the Fortenova Group by Open Pass and its beneficial owners, including through the sale of MidCo to BidCo, sources of payments for Akin's services on any of the above.

## ARGUMENT

SBK ART respectfully submits that this Court should grant the Application because:

(1)     it meets the statutory requirements set forth in Section 1782 (i.e., the person from whom discovery is sought resides in the district to which the application is made, the request seeks testimony, information and the production of documents, the discovery is for use in proceedings before a foreign tribunal and the applicant is an "interested person"); and

(2)     weighing the discretionary factors established by controlling case law (e.g., whether (a) the target of discovery is a participant in the foreign proceedings; (b) the foreign tribunals are receptive to the use of the Requested Discovery; (c) the

---

fortenova-ceo-helped-local-tycoon-take-control-of-group-306842/?source=croatia.)).        As **Grmoja told a press conference**: "This is a huge scandal and I expect investigative bodies, [State Attorney's Office] DORH, [anti-corruption agency] USKOK and the police to come knocking at the door of [Prime Minister Andrej] Plenkovic's commissioner for Agrokor, Fabris Perusko, who made it possible for tycoon Vujnovac to take over Fortenova . . .".

request is an attempt to circumvent foreign law; and (d) the request is unduly burdensome) compels such result. Indeed, granting the Application will serve Section 1782's "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to [U.S.] courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004) (internal quotations and citation omitted).

### A.    The Application Meets the § 1782 Statutory and Discretionary Factors.

In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), the Supreme Court held that in determining whether to grant an application under Section 1782, this Court must consider both statutory *and* discretionary factors. As demonstrated in detail below, SBK ART amply meets each of the statutory factors, and the discretionary factors weigh in favor of granting the Application.

### 1.    Granting SBK ART's *Ex Parte* Application is Appropriate and Fair Under § 1782.

As an initial matter, the Applicant notes that it is procedurally appropriate for this Court to entertain this *ex parte* application pursuant to Section 1782. Indeed, courts have held that "[d]istrict courts are generally authorized to review a § 1782 application on an ex parte basis." *In re Del Valle Ruiz*, 342 F.Supp.3d 448, 457 (S.D.N.Y., 2018).  And "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte." *In re O'Keeffe*, 650 Fed.Appx. 83, 85 (C.A.2 (N.Y.), 2016) (citing *Gushlak v. Gushlak*, 486 Fed.Appx. 215, 217 (2d Cir.2012) (summary order) (collecting cases); *see also In re Rivada Networks*, 230 F. Supp. 3d 467, 473 (E.D. Va. 2017) ("[Plaintiff's] decision to file an ex parte § 1782 application was proper—indeed, that decision was unremarkable, as § 1782 applications

are routinely filed ex parte.") (citing *Gushlak* at 217; *accord Matter of de Leon*, No. 19-MC-0197 (TSC), 2020 WL 1047742, at *3 (D.D.C. Mar. 4, 2020).

E*x parte* review is "justified by the fact that the parties [from whom discovery is sought] will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 (S.D.N.Y. 1991); *see also Matter of de Leon*, No. 19-MC-0197 (TSC), 2020 WL 1047742, at *3 (D.D.C. Mar. 4, 2020).

Section 1782 specifically provides that the "order may prescribe the practice and procedure" and goes on to say "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a).

### 2. SBK ART's Application Meets the Statutory Requirements of § 1782.

For the reasons discussed below, the Application meets each of the following statutory requirements set forth in Section 1782:

"The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made…upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court…To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a).

Specifically, Section 1782 requires that the (1) person from whom discovery is sought resides in or is found in the district; (2) discovery is for use in a proceeding before a foreign tribunal, and (3) application is made by either a foreign tribunal or an interested party.  *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015); *In re of Lucille Holdings Pte. Ltd.*, No. 1:21-MC-99 (GMH), 2022 WL 1421816, at *7 (D.D.C. May 5, 2022); *In re Pishevar*, No. 21-MC-105, 2023 WL 2072454, at *3 (D.D.C. Feb. 17, 2023); *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015).

### a.    Akin  "Resides" or is "Found" in This District.

An individual or company resides in the relevant District if its office is located within the District. *In re Al-Attabi*, 2021 WL 4027021, at *2 (S.D.N.Y. 2021); *see also In re Pishevar*, 2023 WL 2072454, at *2 (holding that "[a] corporation is 'found within' the district where it is headquartered or incorporated.") (citing *In re Application of Masters for an Ord. Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in a Foreign Proceeding*, 315 F. Supp. 3d 269, 274–75 (D.D.C. 2018) (collecting cases)); and *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006); *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (holding that the term "found" "extends to the limits of personal jurisdiction consistent with due process").

In filings with the New York Secretary of State, both AGSH&F and Akin Gump are registered Limited Liability Partnerships in the State of New York, and the Akin Gump entity has its principal business office listed as being in lower Manhattan ( *See* Piazza Decl. at Ex. K). Thus, Akin resides in the Southern District of New York for purposes of Section 1782 and the first statutory requirement is satisfied.

### b.    The Requested Discovery is "For Use" in a "Foreign Proceeding."

Under the second statutory requirement, an applicant must demonstrate that the Requested Discovery is for use in a proceeding before a foreign tribunal. As discussed further below, (1) the EU Action, the Malta Action and Contemplated Proceedings constitute foreign proceedings under Section 1782; and (2) the Requested Discovery is for use in these proceedings.

As discussed herein, SBK ART seeks evidence regarding actions taken in furtherance of the scheme that culminated in the sham transaction approved on December 19, 2023, stripping SBK ART of its Fortenova Group ownership interests. SBK ART will use the Requested Discovery in the previously described Foreign Proceedings and the Contemplated Proceedings to support its claims that the EU sanctions were wrongly introduced against it and that it has been taken advantage of by Open Pass, individuals with Open Pass, and with Fortenova Group's management.

The EU Action is focused upon the wrongful sanctioning of SBK ART after it was wholly owned by Mr. Alketbi, a non-sanctioned individual. Akin is in possession of documents related to the Akin Opinion which is important in the context of sanctioning SBK ART. Furthermore, the Applicant considers it likely that Akin has information on details of lobbying efforts taken by or on behalf of Fortenova Group to preclude SBK ART from exercising their DR voting rights.

The Malta Action seeks damages from Open Pass, a Malta-based company, and certain other entities and individuals as a result of the approval of the Corporate Changes to the Fortenova Group in January 2023. (See Refalo Decl. at Ex. 1 (Malta Complaint)). As more fully described in the Refalo Declaration (Maltese counsel for SBK ART) and in the Malta Action, the Applicant believes it to be certain and highly relevant that Akin is in possession of

18

documents and information related to its advice to Fortenova Group in connection with the acquisition of SBK ART by Mr Alketbi, any communications between Akin and Fortenova Group's representatives in relation to lobbying for sanctions against SBK ART in the EU and/or in the USA or in relation to any other lobbying related to SBK ART, any other communications in relation to take over of the Fortenova Group by Open Pass and its beneficial owners. This information can help establish how Mr. Vujnovac implemented his plan to take over control of Fortenova Group at the cost of SBK ART.

As part of the Contemplated Proceedings and as a result of the MidCo Sale, SBK ART intends to seek to recover damages proximately caused by Open Pass and the individuals that are the ultimate beneficial owners of Open Pass, along with Fortenova Group's management and their accomplices. All the documents, information, and communications by Akin in relation to take over of the Fortenova Group by Open Pass and its beneficial owners, including through the sale of MidCo to BidCo are highly relevant for these proceedings as they will show that the transaction is not for the benefit of the Fortenova Group and all of its DR Holders but rather for the benefit of Open Pass only.

For these reasons the Applicant contends that all the Requested Discovery is relevant to and for use in the Foreign Proceedings and the Contemplated Proceedings.

### c.    SBK ART is an "Interested Person."

Lastly, SBK ART's status as a litigant in the Malta Action and a potential litigant in the Contemplated Proceeding renders it an "interested person" in the Foreign Proceedings under Section 1782.  Indeed, as the Supreme Court has acknowledged, "[n]o doubt litigants are included among, and may be the most  common example of, the interested persons who may

invoke [Section] 1782." *Intel*, 542 U.S. at 256 (internal quotations omitted).[15] Thus, the third statutory requirement plainly is satisfied.

### 3. Discretionary Factors Weigh in Favor of SBK ART's Application.

The discretionary factors set out by the Supreme Court in the *Intel* decision also strongly favor granting the Application. These factors include: (1) "whether the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) "whether the request is otherwise unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65; *see also Mees*, 793 F.3d at 298; *Matter of de Leon*, No. 2020 WL 1047742, at *2-3; *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010); *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011).

---

[15] Indeed Section 1782 "reaches beyond litigants" and would include SBK ART even if it were only a potential complainant. *See Application of Gianoli Aldunate*, 3 F.3d 54, 57–58 (C.A.2 (Conn.),1993) (explaining that the 1964 amendments to section 1782, *inter alia*, deleted the requirement that the foreign litigation actually be pending.); and *In re Accent Delight International Ltd.*, 869 F.3d 121, 131 (C.A.2 (N.Y.), 2017) ("The text of [Section] 1782(a), 'upon the application of any interested person,' plainly reaches beyond the universe of persons designated litigant."). It is thus not necessary under Section 1782 that an applicant be a party or a litigant as "[a]ny other person…[who] possess(es) a reasonable interest in obtaining the assistance" is also included as an interested party. *See In re Letter of Request from Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-90 (D.C. Cir. 1989) (quoting Professor Hans Smit, "the dominant drafter of, and commentator on, the 1964 revision of [Section 1782]."); *see also In re Ex Parte Application of Société d'Etude de Réalisation et d'Exploitation Pour le Traitement du Mais*, No. 13-mc-0266, 2013 WL 6164435, at *2 n.1 (E.D. Pa. Nov. 22, 2013) (finding that the applicant, a victim of fraud, was an "interested person" in connection with an expected criminal proceeding in the United Kingdom).

a. **Akin is Not a Foreign Proceeding Participant.**

The Supreme Court in *Intel* stated that "when the person for whom discovery is sought is a participant in the foreign proceeding…, the need for [Section 1782] aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in a matter arising abroad." *Intel*, 542 U.S. at 266.

Here, Akin is neither a participant nor anticipated to be one in any of the Foreign Proceedings. *See, e.g.*, *In re Pishevar*, 2023 WL 2072454, at *3 (granting 1782 subpoenas because "Mr. Pishevar does not plan to sue Fusion GPS in the English courts."); *see also In re FourWorld Event Opportunities Fund, L.P.*, No. 22 MISC. 316 (KPF), 2022 WL 17156111, at *4 (S.D.N.Y. Nov. 21, 2022) (granting 1782 application because "[Mr.] Ulbrich is not a party to the Swedish Action."). Moreover, the Application is not alleging that Akin has either committed or willingly participated in the illegitimate acts against SBK ART. As such, this factor weighs in favor of granting the Application.

b. **The Foreign Tribunals are Receptive to U.S. Judicial Assistance.**

As discussed further below, there is no indication that any of the Tribunals overseeing each Foreign Proceeding would reject the evidence collected pursuant to Section 1782. As such, this factor weighs in favor of granting the Application. *See In re Pishevar*, 2023 WL 2072454, at *3 ("[c]ourts in the United States also presume that foreign tribunals will be receptive to evidence obtained here, and ordinarily consider 'only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782.'" (citing *In re Caratube*, 730 F. Supp. 2d 101, 106–06 (D.D.C. 2010); *see also* In re Atvos Agroindustrial Investimentos S.A., 481 F.Supp.3d 166, 176–77 (S.D.N.Y. 2020) (citing Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1102 (2d Cir. 1995); *Fund for Protection of Investor Rights in Foreign States*

*Pursuant to 28 U.S.C. § 1782 for Order Granting Leave to Obtain Discovery for use in Foreign Proceeding v. AlixPartners, LLP*, 5 F.4th 216, 230 (C.A.2 (N.Y.) 2021) ("Absent authoritative proof that a foreign tribunal would reject the evidence, we have explained that a court should generally allow discovery if doing so would further § 1782's goals.").

As each of the foreign lawyer declarants make clear, the use of Section 1782 to obtain discovery is neither prohibited nor discouraged in the relevant jurisdiction (Malta and the EU) where the Malta Action and the EU Action are pending. See Refalo Decl. at ¶¶ 6-7 and Lansky Decl. at ¶16.

### c. The Application Does Not Circumvent the Rules of the Foreign Tribunals.

The Application does not "attempt to circumvent" proof-gathering restrictions of the Tribunals overseeing the Foreign Proceedings; thus, the third discretionary factor also weighs in favor of granting discovery. *See Intel*, 542 U.S. at 264-65. For purposes of this inquiry, proof-gathering  restrictions that define this circumvention factor ask "whether the § 1782 "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." (*In re Accent Delight International Ltd.*, 791 Fed.Appx. 247, 251 (C.A.2 (N.Y.) 2019) (citing *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *Intel Corp.*, 542 U.S. at 264–65, 124 S.Ct. 2466); *see also In re DiGiulian*, 314 F. Supp. 3d 1, 8–9 (D.D.C. 2018) (lack of evidence in record to indicate procedures of Quebec Superior Court would be circumvented).

The issue is ***not*** "whether [the foreign jurisdiction] has 'rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information.'" *In re Accent Delight Int'l Ltd.,* No. 16-MC-125 (JMF), 2018

WL 2849724, at *4 (S.D.N.Y. June 11, 2018) (quoting *Mees*, 793 F.3d at 303 n.20); *see also In re Accent Delight International Ltd.*, 791 Fed.Appx. 247, 251 (C.A.2 (N.Y. 2019).

As each of the foreign lawyer declarants make clear, there are no "proof gathering restrictions" in Malta or in the EU that preclude SBK ART from seeking discovery from Akin under Section 1782. See Refalo Decl. at ¶¶ 6-8 and Lansky Decl. at ¶16. Moreover, under the relevant rules of procedure in Malta and in the EU, foreign counsel anticipate that relevant discovery obtained from Akin can be admitted into evidence in each action. (*Id.*).

### d. The Application is Narrowly Tailored to Avoid Unnecessary Burdens in Accordance with the Federal Rules Of Civil Procedure

Finally, the fourth factor favors granting discovery because the Application is narrowly tailored to include only relevant and readily identifiable information and documents and avoid any undue burden on Akin.

First, "[t]he proper scope of the discovery sought under section 1782, like all federal discovery, is governed by Federal Rule 26(b)." *In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries and* to Federal Rules of Civil Procedure suggests that, under ordinary circumstances, standards for discovery under those Rules should also apply when discovery is sought under section 1782). *See also In re Veiga*, 746 F. Supp. 2d 8, 25 (D.D.C. 2010) (concluding that Section 1782 request was "reasonably tailored" to the "claims and defenses raised in the proceedings at issue").[16] As described above, the Requested Discovery directly bears upon the sham transaction allegations in each of the Foreign Proceedings.

---

[16] While SBK ART does not anticipate any substantial issue with privilege, it reserves the right to challenge the assertion of privilege including under all available mechanisms including, without limitation, under the crime-fraud exception.

Second, the Requested Discovery would not be unduly burdensome for Akin to produce, as the requests are targeted in scope and time, and should be of the type regularly maintained in the ordinary course of business by and accessible to Akin.

Because the Requested Discovery (1) seeks material documents and information; (2) is limited by scope and date; (3) is maintained or accessible in the normal course of business by Akin; and (4) is sufficiently specific to allow Akin to identify and produce the documents and information with minimal burden, the Application comports with the Federal Rules of Civil Procedure and should be granted.

## CONCLUSION

Based on the foregoing, SBK ART respectfully requests the Court to issue an Order granting the Application and authorizing the Applicant to serve Akin in New York with the subpoena attached as Exhibit H to the Piazza Declaration, directing  Akin to produce the Requested Discovery in its possession, custody, or control and appear for a deposition.


DATED:  March 26, 2024                              ROBERT LANDY


                                                            By:  _/s/ Robert S. Landy___
                                                                   ROBERT S. LANDY
                                                                   MICHAEL A. PIAZZA
                                                                   ADAM C. YAEGER

                                                                   Attorneys for Applicant
                                                                   SBK ART LLC

24