UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE EX PARTE APPLICATION OF SBK ART
LLC, Petitioner,
for an Order Pursuant to 28 U.S.C. § 1782
To Take Discovery for Use in Foreign
Proceedings.

CIVIL ACTION NO. 24-MC-0147 (PAE) (RFT)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE PAUL A. ENGELMAYER, UNITED STATES DISTRICT JUDGE:**

On March 26, 2024, SBK ART LLC ("Petitioner") submitted an ex parte Application and

Petition (the "Application") pursuant to 28 U.S.C. § 1782 for an order authorizing Petitioner to

serve subpoenas on Akin Gump Strauss Hauer & Feld LLP and Akin Gump LLP (together,

Respondents or "Akin") to obtain discovery for use in: (1) a pending lawsuit filed in the Civil

Court of Malta (the "Malta Action"), (2) anticipated litigation in the Netherlands (the

"Anticipated Litigation"), and (3) a pending action in front of the General Court for the

European Union (the "EU Action") (together, the "Foreign Proceedings"). (*See* ECF 1, Petition;

ECF 8, Motion.) Having reviewed Petitioner's and Respondents' submissions, for the reasons set

forth below, I respectfully recommend that the Application be GRANTED, with the proposed

subpoenas revised as set forth herein;[1] to the extent that, upon undertaking the document

---

[1]     "Until recently, the consensus view in this District was that 'rulings on § 1782 applications are not dispositive,' and therefore that such an application could be disposed by order of the Magistrate Judge to whom it was referred . . . ." *In re Libyan Asset Recovery and Mgmt. Office*, No. 21 Misc. 0852 (JGK) (BCM), 2023 WL 8445811, at *1 n.1 (S.D.N.Y. Nov. 16, 2023) (quoting *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019)). However, in *Associação dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp.*, No. 22-2865, 2023 WL 3166357 (2d Cir. Mar. 28, 2023), a panel of the Second Circuit decided that it lacked jurisdiction to review the order issued by a Magistrate Judge denying an application under Section 1782 and remanded so that the order could be "treated as a report and recommendation." 2023 WL 3166357, at *1. While the Second Circuit did not explain its reasoning, the theory would be that

production, Akin concludes that compliance would be overly burdensome, it may come back to the Court after engaging in a meet-and-confer process.

## BACKGROUND

**I.    Factual Background**

Fortenova Grupa d.d. ("Grupa"), a Croatian food and retail company, is held by a series of Dutch holding companies (the "Fortenova Group"), with Fortenova Group STAK Stichting ("STAK") at the top of the corporate structure. (*See* ECF 3, Michael A. Piazza Declaration ("Piazza Decl.") Ex. B (Fortenova Group Structure).) Petitioner claims it is the rightful owner of an approximately 42% interest in Grupa through Petitioner's ownership of depositary receipts issued by STAK ("STAK DRs"). (*See id.*)

Petitioner acquired its STAK DRs in April 2022 from the Russian bank PJSC Sberbank of Russia ("Sberbank"), which was the majority owner of Petitioner at the time. (*See* ECF 3, Piazza Decl. Ex. D (Article).) After the beginning of the war in Ukraine, Sberbank was sanctioned by the United States, the United Kingdom, and the European Union ("EU"). Thereafter, Sberbank sold its stake in Petitioner to Saif J.S.M. Alketbi ("Mr. Alketbi"), a businessman from the United Arab Emirates. (*See* ECF 13, Unredacted Versions of Proposed Sealed Documents in Support of Application (Ex. 1, Petitioner's Mem. at 5).)

The second largest minority owner of Grupa is a Maltese company, Open Pass Limited ("Open Pass") (*see* ECF 3, Piazza Decl. Ex. B (Fortenova Group Structure)), which is controlled by

---

the entire purpose of a Section 1782 petition is to seek discovery, so that any decision regarding whether discovery may proceed is dispositive. I therefore make a report and recommendation on the Application rather than issuing an opinion and order.

Mr. Pavao Vujnovac ("Mr. Vujnovac"). (*See* ECF 13 Ex. 1, Petitioner's Mem. at 2.) Starting in

2019, Mr. Vujnovac began acquiring STAK DRs, which Petitioner says was part of a plan to gain

control of Grupa; in 2021, he established Open Pass and transferred into it all or most of the

STAK DRs he owned at the time. (*See id.* at 6-7.) Petitioner asserts that Mr. Vujnovac used the

sanctions against Sberbank to advance his plan to gain control of Grupa. (*See id.*)

Akin is "an American multinational law firm with offices throughout the US and across

the globe." (ECF 22, Respondents' Opp. at 4.) In recent years, Akin's London office has been

lead English law counsel to Fortenova Group on most of its matters, "including (since 2022) in

connection with issues arising from the presence of sanctioned holders in its capital structure."

(ECF 23, Declaration of Liz Osborne in Opposition to Petition ("Osborne Decl.") ¶ 6.) In addition

to serving as Fortenova Group's English law legal counsel, Akin is also a registered lobbyist for

Fortenova Group and has done some work lobbying in the U.S. for Fortenova Group. (*See* ECF

41, Second Declaration of Robert Pees in Opposition ("Second Pees Decl.") ¶¶ 12-13.)

Petitioner contends that after its sale to Mr. Alketbi, Open Pass began a smear campaign

against him while at the same time encouraging Croatian officials to lobby EU officials to have

Petitioner sanctioned in the EU. (*See* ECF 13 Ex. 1, Petitioner's Mem. at 6-8.) In particular,

Petitioner claims that on December 14, 2022, it received documents that STAK had provided to

a Dutch court to contest Petitioner's right to exercise its voting rights in STAK. (*See id.*) Those

documents included an opinion issued by Akin (the "Akin Opinion") stating that documents

provided by Mr. Alketbi explaining his acquisition of Petitioner were: "insufficient to confirm

that the transaction under review [has] resulted in SBK [ART] no longer being subject to the

asset freeze restrictions imposed on its purported (former) parent company Sberbank"; and

"indicative of criminal sanctions breaches having been committed by EU persons in relation to the transaction under review." (*Id.* at 7.) The Akin Opinion listed documents necessary to analyze Mr. Alketbi's acquisition of Petitioner. The listed documents had already been requested by STAK from Mr. Alketbi, which leads Petitioner to conclude that Akin was advising STAK in connection with STAK's review of Mr. Alketbi's acquisition of Petitioner and that STAK had instructed Akin to "assist in a plan to deny Mr. Alketbi his voting and ownership rights." (*Id.*) On December 16, 2022, Petitioner was added to the EU list of sanctioned entities. (*See id.* at 7-8.)

Petitioner believes that Respondents lobbied the EU Council to sanction Petitioner. (*See* ECF 42, Petitioner's Response ("The petition, at its core, seeks records relating to Akin's work done in connection with coming to the conclusions in the Akin Opinion, and its efforts to advocate on behalf of Fortenova (and regarding SBK ART) before . . . the EU Council.").) And it appears that the EU Council somehow obtained a copy of the Akin Opinion. (*See Id.* at 2 (stating that the EU Council turned over a copy of the Akin Opinion in connection with discovery in the EU Action).) According to Petitioner: "Taking into account the short period of time between the issuance of the Akin Opinion (14 December 2022) and the date of introduction of sanctions against SBK ART on the basis, among other things, of the Akin Opinion (16 December 2022), the Akin Opinion could have ended up with the Council of the EU only through the Fortenova Group's management." (ECF 13 Ex. 1, Petitioner's Mem. at 8.)

On January 12, 2023, STAK held a meeting of the STAK DR Holders about the proposed changes to the corporate governance of the Fortenova Group ("Corporate Changes"), which were approved based on Open Pass's votes in favor; Petitioner, as a sanctioned entity, was not

permitted to vote, and two-thirds of the remaining STAK DR Holders (other than Open Pass) voted against the Corporate Changes. (*See id.* at 9; ECF 13 Ex. 4, Action for Annulment ¶ 74.)

Having secured control of Grupa as a result of the Corporate Changes, Open Pass then arranged for the sale of the Dutch holding company, Fortenova Group MidCo B.CV. ("MidCo"), which indirectly held all of Grupa's shares, at an artificially low price, to benefit Open Pass and harm Grupa's other owners, including Petitioner. (*See* ECF 3, Piazza Decl. Ex. G (Article); ECF 13 Ex. 1, Petitioner's Mem. at 9-12.)

## II.    Procedural History

On March 26, 2024, Petitioner submitted its Application pursuant to 28 U.S.C. § 1782 for an order authorizing Petitioner to serve subpoenas on Akin for use in the Foreign Proceedings. (*See* ECF 8, Motion; ECF 13 Ex. 1, Petitioner's Mem.; ECF 3, Piazza Decl.; ECF 13 Ex. 3, Declaration of Dr. Gabriel Lansky in Support ("Lansky Decl."); ECF 5, Declaration of John Refalo in Support ("Refalo Decl.").)[2] The previous day, Petitioner had submitted an application seeking discovery from Kroll LLC ("Kroll") (the "Kroll Application"), which matter was referred to me for general pretrial supervision and dispositive motions. On April 3, 2024, the Court referred this matter to me for general pretrial supervision and dispositive motions as well. (*See* ECF 14, Order.)

---

[2]    Petitioner's Memorandum of Law and Exhibit 1 thereto (ECF 6) and the Lansky Declaration and Exhibit 2 thereto (ECF 4) were filed in redacted form. Petitioner filed a motion to seal on March 28, 2024 along with unredacted versions of the proposed sealed documents. (*See* ECF 11, Mot. To Seal; ECF 12, Mem. in Support of Mot. To Seal; ECF 13, Unredacted Versions of Proposed Sealed Documents in Support of Application.) On April 18, 2024, I granted Petitioner's motion to seal. (*See* ECF 16, Order.)

On April 18, 2024, I ordered Petitioner to serve Akin with the Application and supporting papers and set deadlines for Akin's response to the Application, if any, and for Petitioner's reply, if any. (*See* ECF 17, Order.) On April 22, 2024, this case was accepted as related to the Kroll Application.

On May 5, 2024, after having been informed by Petitioner on April 15, 2024 that "Kroll will not oppose the issuance of the subpoena under 28 U.S.C. § 1782 but reserves its right to object to the resulting subpoena under any grounds available and appropriate under Fed. R. Civ. P. 45," *See In Re: SBK ART LLC,* No. 24-MC-0142 (PAE) (RFT), ECF 11, Letter at 1 n.1, I issued a report and recommendation on the Kroll Application, recommending that Petitioner's application to take discovery from Kroll be granted.[3]

On May 6, 2024, Akin filed a response in opposition to the Application with supporting papers. (*See* ECF 22, Respondents' Opp.; ECF 23, Osborne Decl.; ECF 24, Declaration of Ross Denton in Opposition ("Denton Decl."); ECF 25, Declaration of Daniel Buttigieg in Opposition ("Buttigieg Decl."); ECF 26, Declaration of Christiaan Zijderveld in Opposition ("Zijderveld Decl."); ECF 27, Declaration of Robert Pees in Opposition ("Pees Decl.").)

On May 31, 2024, Petitioner filed under seal its reply in further support of the Application. (*See* ECF 33, Petitioner's Reply; ECF 33-1, Declaration of Robert S. Landy in Further Support ("Landy Decl."); ECF 33, Petitioner's Reply Ex. 1, Second Declaration of Dr. Gabriel Lansky in Support with Exhibit ("Second Lansky Decl."); ECF 33, Petitioner's Reply Ex. 2,

---

[3]      On May 17, 2024, Kroll filed a request for an extension of time to file objections to my report and recommendation until after a decision on the Application in this action. *See In Re: SBK ART LLC,* No. 24-MC-0142 (PAE) (RFT), ECF 18, Letter Mot. That request was granted. *See In Re: SBK ART LLC,* No. 24-MC-0142 (PAE) (RFT), ECF 20.

Declaration of Ali Al-Karim in Support ("Al-Karim Decl."); ECF 33, Petitioner's Reply Ex. 3,

Declaration of Elbert Jan Hendrik Zandbergen ("Zandbergen Decl."); ECF 33, Petitioner's Reply

Ex. 4, Second Declaration of John Refalo ("Second Refalo Decl.").)[4]

On July 1, 2024 and July 8, 2024, I issued orders requesting further briefing on certain

topics. (*See* ECF 35, 7/1/2024 Order; ECF 36, 7/8/2024 Order.) Petitioner made a supplemental

filing on July 11, 2024 (*see* ECF 37, Petitioner's Response, attaching Second Declaration of

Robert S. Landy ("Second Landy Decl.") and Third Declaration of Dr. Gabriel Lansky ("Third

Lansky Decl.")); Respondents filed their supplemental response on July 17, 2024 (*see* ECF 38,

Respondents' Response; ECF 39, Second Declaration of Ross Denton ("Second Denton Decl.");

ECF 40, Declaration of Richard Hornshaw ("Hornshaw Decl."); ECF 41, Second Pees Decl.).

Petitioner filed a supplemental response on July 19, 2024 (*see* ECF 42, Petitioner's Supp.

Response).[5] I held oral argument on July 23, 2024.

## III.    The Application

Petitioner seeks discovery – documents and depositions – from Akin in connection with

three matters: (1) the Malta Action, which is a suit by Petitioner against Open Pass and

Fortenova Group for damages caused to Petitioner by the approval of the Corporate Changes;

(2) the Anticipated Litigation, which is a claim that Petitioner intends to file in the Netherlands

or another foreign court outside the United States to seek damages caused by the MidCo Sale;

---

[4]     Petitioner also filed an unsealed redacted version of the sealed filing. (*See* ECF 34, Reply; ECF 34-1, Landy Decl.; ECF 34 Ex. 1, Second Lansky Decl.; ECF 34 Ex. 2, Al-Karim Decl.; ECF 34 Ex. 3, Zandbergen Decl.; ECF 34 Ex. 4, Second Refalo Decl.)

[5]     A redacted version of Respondents' Response (ECF 42) was filed at ECF 43.

and (3) the EU Action, in which Petitioner is seeking to annul the EU Council's decision to list

Petitioner as a sanctioned entity. (*See* ECF 13 Ex. 1, Petitioner's Mem. at 2-3.)

Petitioner seeks production of non-privileged documents on the following topics, dating

from January 1, 2019 through the present: (1) Mr. Alketbi's acquisition of Petitioner, the

Corporate Changes, and Mr. Vujnovac's ownership and/or control over the Fortenova Group,

including but not limited to communications about those topics between Akin and a list of

enumerated individuals and entities; (2) Akin's lobbying efforts on behalf of the Fortenova

Group in the United States, the United Kingdom, or the EU; and (3) communications between

Akin and the U.S. Department of Treasury's Office of Foreign Assets Control, the U.S. State

Department, the Dutch Ministry of Finance, the U.K. Office of Financial Sanctions

Implementation, the National Bank of Serbia, Croatian government officials and staff, and EU

officials and staff. (*See* ECF 3, Piazza Decl. Ex. H (Proposed Document Subpoena) at 2, 11-13.)

Petitioner seeks testimony from Akin about: (1) its role and responsibilities in analyzing

Mr. Alketbi's acquisition of Petitioner; (2) its role, responsibilities, and lobbying efforts on

behalf of the Fortenova Group in the United States, the United Kingdom, the EU, or before any

other relevant authority, including the U.S. Department of Treasury's Office of Foreign Assets

Control, the U.S. State Department, the Dutch Ministry of Finance, the U.K. Office of Financial

Sanctions Implementation, the National Bank of Serbia, Croatian government officials and staff,

and EU officials and staff; (3) the support for its conclusion in the Akin Opinion that Sberbank

effectively controls Petitioner; (4) other information related to the Akin Opinion; (5)

information provided to Akin concerning Mr. Alketbi's acquisition of Petitioner, the Corporate

Changes, and Mr. Vujnovac's ownership and/or control over the Fortenova Group; (6)

communications between Akin and a list of enumerated individuals and entities concerning Mr. Alketbi's acquisition of Petitioner, the Corporate Changes, and Mr. Vujnovac's ownership and/or control over the Fortenova Group; and (7) Akin's document production. (*See* ECF 3, Piazza Decl. Ex. H (Proposed Deposition Subpoena) at 7-10.)

Petitioner argues that the requested discovery will provide evidence of a "scheme that culminated in the sham transaction approved on December 19, 2023, stripping SBK ART of its Fortenova Group ownership interests" and "of lobbying efforts taken by or on behalf of Fortenova Group to preclude SBK ART from exercising their DR voting rights," which issues will be adjudicated in the Foreign Proceedings. (*See* ECF 13 Ex. 1, Petitioner's Mem. at 18.)

<u>DISCUSSION</u>

I.    **Legal Standard**

Under 28 U.S.C. § 1782(a), a federal district court may order any person who "resides or is found" in the district "to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." Under the statute, the party making the application must show that: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *In re Guo*, 965 F.3d 96, 102 (2d Cir. 2020) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (alterations, internal quotation marks, and citations omitted)).

When the statutory requirements are met, the court is "free to grant discovery in its discretion." *In re Optimal Inv. Servs., S.A.,* 773 F.3d 456, 460 (2d Cir. 2014). Although that

discretion is broad, it "must be exercised in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mangouras v. Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (internal quotation marks and citations omitted).

The Supreme Court has identified four discretionary factors (the "*Intel* Factors") that a court considers when ruling on a Section 1782 application: "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome." *Id*. at 97-98 (citing *Mees*, 793 F.3d at 298 and *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

The fourth *Intel* Factor – whether the request is "unduly intrusive or burdensome" – is measured by the standards of Rule 26 of the Federal Rules of Civil Procedure. *See In re XPO Logistics, Inc.*, No. 15-MC-0205 (LGS), 2017 WL 6343689, at *4 (S.D.N.Y. Dec. 11, 2017) (citing *Mees*, 793 F.3d at 303). As applied to Section 1782 applications, Rule 26 "contemplate[s] that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Associação dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp.*, No. 22-MC-0132 (RA) (KHP) ("*Correios*"),

10

2022 WL 4955312, at *8 (S.D.N.Y. Oct. 4, 2022), *remanded on other grounds*, 2023 WL 3166357 (2d Cir. Mar. 28, 2023). The "proportionality analysis depends on the relevance of the information sought – and, in the case of a § 1782 petition, relevance is assessed with regard to the foreign proceeding." *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 39 (2d Cir. 2017).

The Second Circuit has instructed that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees*, 793 F.3d at 302 (internal quotation marks and citation omitted). Thus, where the court finds that discovery sought under Section 1782 is overbroad, "before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery." *Id.*; *see also In re Fed. Republic of Nigeria*, No. 21-MC-0007 (JGK) (VF), 2022 WL 4234556, at *6 (S.D.N.Y. Sept. 14, 2022).

II. **Analysis**

A.    The Statutory Requirements Are Met

Petitioner argues that it has met the Section 1782 statutory requirements. (*See* ECF 13 Ex. 1, Petitioner's Mem. at 14-16.) Respondents contend that the "Petition suffers from multiple infirmities, but the requirement that any discovery sought pursuant to Section 1782 must be 'for use' in a foreign proceeding is an essential element SBK cannot satisfy." (ECF 22, Respondents' Opp. at 10.)  For the reasons set forth below, I agree with Petitioner that the statutory requirements are met.

1.  Akin Is Found in this District

Respondents do not appear to contest that Akin is found in this District. And in filings with the New York Secretary of State, both Akin Gump Strauss Hauer & Feld LLP and Akin Gump LLP are registered limited liability partnerships in the State of New York, and Akin Gump LLP has its principal business office listed as being in Manhattan (*See* ECF 3, Piazza Decl. Ex. I, New York Department of State Entity Information.) Thus, Akin resides in the Southern District of New York for purposes of Section 1782 and the first statutory requirement is satisfied. *See Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) ("[T]he place of incorporation and principal place of business are paradigmatic . . . bases for general jurisdiction."); *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 459 (S.D.N.Y. 2018) (holding that a corporation that maintained its principal place of business within the district satisfied the statutory "resides or is found" within district requirement for discovery order), *aff'd*, 939 F.3d 520 (2d Cir. 2019).

2.  The Discovery Sought Is for Use in a Foreign Proceeding

Petitioner states that it seeks the contemplated discovery for use in (1) the Malta Action against Open Pass and Fortenova Group for damages caused by the approval of the Corporate Changes, (2) in the Anticipated Litigation to seek damages caused by the MidCo Sale, and (3) in the EU Action challenging Petitioner's status as a sanctioned entity. (*See* ECF 13 Ex. 1, Petitioner's Mem. at 2-3, 18.) Petitioner argues that the Foreign Proceedings are the types of proceedings contemplated by Section 1782 and that the discovery sought is relevant to those actions. (*See id.* at 17-19.)

Respondents counter that the Malta Action is likely to be dismissed in the near future, just as a similar claim by Petitioner in Malta was dismissed in April 2024, and that the

Anticipated Litigation is not "reasonably contemplated" as required under the caselaw interpreting Section 1782. (*See* ECF 22, Respondents' Opp. at 10-14.) Respondents also argue that the discovery sought does not satisfy the requirement of being "for use" in a foreign proceeding, because Petitioner has not demonstrated that such discovery would increase the likelihood of success in the Malta Action or the EU Action. (*See id*. at 12-13.)

a.  *There Are Qualifying Foreign Proceedings*

In analyzing whether discovery being sought under Section 1782 is "for use in a proceeding before a foreign tribunal," courts look to whether "there actually is a foreign proceeding," *Jiangsu Steamship Co., Ltd. v. Success Superior Ltd*., No. 14-CV-9997(CM), 2015 WL 3439220, at *4 (S.D.N.Y Feb 5, 2015) (citing *Intel*, 542 U.S. 241 at 259), as well as "whether [the] foreign proceeding is adjudicative in nature." *Euromepa, S.A. v. R. Esmerian, Inc*., 154 F.3d 24, 27 (2d Cir. 1998). There actually is a foreign proceeding if a foreign proceeding is pending or "reasonably contemplated." *Jiangsu Steamship Co.,* 2015 WL 3439220, at *4 (citing *Intel*, 542 U.S. 241 at 259). Here, two of the Foreign Proceedings – the Malta Action and the EU Action – are currently pending (*see* ECF 5, Refalo Decl. ¶ 1; ECF 13 Ex. 3, Lansky Decl. ¶¶ 8-10, 16-17; ECF 33, Petitioner's Reply Ex. 1, Second Lansky Decl. ¶¶ 11-14), which satisfies the first requirement. While Respondents may be correct that the Malta Action is likely to be dismissed in the near future, until that happens, the Malta Action is an appropriate predicate for a grant of discovery under Section 1782. *See In re Children's Investment Fund Foundation (UK)*, 363 F. Supp. 3d 361, 377 (S.D.N.Y. 2019) (declining to "engage in speculation about how any of the

Foreign Proceedings may be resolved" and stay the 1782 petition based on the respondent's claim that the foreign proceedings were "likely to be dismissed").[6]

Respondents do not appear to contest that the Malta Action and the EU Action are adjudicative in nature. (*See* ECF 22, Respondent's Opp. at 10.) I believe that the Malta Action is adjudicative in nature, in that it asks the court in Malta to (1) declare that the defendants in that case abused their rights as STAK DR Holders and caused damage to Petitioner and (2) order the defendants to pay damages to Petitioner. (*See* ECF 5, Refalo Decl. Ex. 1 at 34.) And I believe that the EU Action is also adjudicative, because it asks for a determination that Petitioner should not be a sanctioned entity. (*See* ECF 33, Petitioner's Reply Ex. 1, Second Lansky Decl. ¶ 7.) Accordingly, the Malta Action and the EU Action qualify as foreign proceedings for purposes of Section 1782.

It is not clear that the Anticipated Litigation would be sufficient standing alone to satisfy the requirement that there is an "identifiable foreign proceeding" that is "reasonably contemplated." *Jiangsu Steamship Co*., 2015 WL 3439220, at *4 (citing *Intel*, 542 U.S. at 259) (noting that a foreign proceeding need not be pending or imminent but must be "within reasonable contemplation"). However, Petitioner is seeking the same discovery for use in the Anticipated Litigation as it seeks in the Malta Action and the EU Action (*see* ECF 5, Refalo Decl. ¶ 5; ECF 13 Ex. 3, Lansky Decl. ¶¶ 13-15), and since the pendency of the Malta Action and the

---

[6]    Respondents suggest that the Court should "hold" its decision until some unspecified time in the future when the Maltese court decides whether to dismiss the Malta Action as vexatious (*see* ECF 22, Respondents' Opp. at 14), but they provide no case law supporting that outcome, and I have been unable to locate any. I therefore see no basis for recommending that Your Honor delay a decision on the Petition.

EU Action satisfies the requirement of a foreign proceeding, I need not address whether the Anticipated Litigation would also satisfy the requirement.

### b.  Discovery "for Use" in a Foreign Proceeding

The statutory "for use" factor requires a showing that the requested discovery is "relevant to the subject matter of the [foreign] proceeding, and the evidence would 'increase the applicant's chances of success' in the proceeding." *In re Asia Mar. Pac., Ltd.*, 253 F. Supp. 3d 701, 706 (S.D.N.Y. Aug. 26, 2015) (quoting *Mees*, 793 F.3d at 299). Rule 26(b) of the Federal Rules of Civil Procedure requires that information sought through discovery be relevant to a claim or defense. Thus, an applicant's discovery requests should be "tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Athene Holding Ltd. v. Dang*, No. 23-MC-0171 (JHR) (SLC), 2023 WL 5348950, at *3 (S.D.N.Y. Aug. 21, 2023) (internal quotation marks and citation omitted). Additionally, however, as explained by the Second Circuit, because Congress "adopt[ed] the phrase 'for use,'" it "plainly meant to require that § 1782 applicants show that the evidence sought is something that will be employed with some advantage or serve some use in the proceeding." *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015). As a result, courts addressing requests for discovery under Section 1782 must determine whether the applicant "will actually be able to *use* the information in the proceeding." *Id.* (internal quotation marks and citation omitted).

### i.  The Parties' Arguments

Respondents argue that the discovery sought by Petitioner does not meet the statutory for use requirement because "much of the discovery SBK seeks is either privileged or already

possessed by" Fortenova Group or the EU Council, which are SBK's "true adversaries." (ECF 22, Respondents' Opp. at 12-13.) Respondents conclude that Section 1782 is an inappropriate mechanism for obtaining such discovery, because Section 1782 does not contemplate seeking discovery of materials that already are possessed by the adversaries of the party seeking discovery; Respondents also state that Section 1782 does not permit discovery of privileged materials. (*See id*.) Respondents posit that the only remaining categories of requested discovery would be non-privileged materials either "uniquely possessed by Akin" or shared only "with third parties other than" Fortenova Group and the EU Council; Respondents assert that Petitioner has failed to offer an explanation of the relevance of any such materials, which Respondents say are by definition irrelevant to the Malta Action, because Fortenova Group "could not have been influenced in any way by documents that" it never saw, and to the EU Action, because the EU Council likewise could not have been influenced by documents it did not see. (*Id.*) Respondents also contest Petitioner's contention that Akin did significant work for Fortenova Group as a lobbyist: according to Respondents, "Akin was retained by Fortenova as its legal counsel, and nearly all the work Akin has done for Fortenova has been in that capacity." (ECF 38, Respondents' Response at 7; ECF 41, Second Pees Decl. ¶¶ 10-13.)

Petitioner makes clear that it seeks documents beyond those "uniquely possessed by Akin" and/or documents that were "shared with third parties other than" Fortenova Group and the EU Council: Petitioner also seeks "communications directly or indirectly with Fortenova regarding Akin's investigative work." (ECF 37, Petitioner's Response at 7.) Petitioner argues that such documents, if not privileged, are subject to discovery through the Application even if they may also be within Fortenova Group's possession. (*See id.*) And Petitioner explains that

documents shared with the EU Council are "not as a practical matter accessible to SBK in the EU Action as the procedural rules governing annulment proceedings before the E.U. General Court do not allow for broad-based discovery from the E.U. Council." (*Id.* at 8 (citing Third Lansky Decl. ¶¶ 7-9).)

Petitioner agrees, as it must, that privileged documents may not be obtained pursuant to Section 1782. *See* 28 U.S.C. § 1782(a) ("A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."); *In re Okean B.V. & Logistic Sol. Int'l*, 60 F. Supp. 3d 419, 428 (S.D.N.Y. 2014) (holding that production of the requested materials "would not only be burdensome" but "would offend core tenets of our legal system (and those of Russia and Ukraine), which each respect a client's privileged communications with counsel" and explaining that under Section 1782, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege"). Petitioner states that it does not seek privileged materials but rather documents that are not privileged because they relate to lobbying efforts or were shared with or received from third parties. (*See* ECF 33, Petitioner's Reply at 5.)

As to the documents sought that Petitioner contends are not privileged, Petitioner seems to interpret Respondents' argument that such materials are irrelevant to the Malta Action and the EU Action as going to the issue whether the requested discovery would be admissible in those actions. Petitioner responds that "the discoverability and admissibility" of requested discovery "in the foreign jurisdiction plays no role in a court's analysis of a Section 1782 petition." (*Id.* at 4.)

ii.    Analysis

Petitioner is correct that, "as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012). However, Respondents do not appear to be arguing that the evidence sought by the Application would be inadmissible. They appear to be making a different point when they argue that the discovery sought is not "for use" in the Malta Action and the EU Action. Respondents cite to a case from the District of New Hampshire to support their position that a court should not grant a Section 1782 petition when the discovery sought is not relevant to the foreign proceedings. (*See* ECF 22, Respondents' Opp. at 13 n.6 (citing *In re Pilatus Bank PLC*, No. 20-MC-94 (JD), 2021 WL 1890752, at *9 (D.N.H. May 11, 2021).)

This general proposition is non-controversial: even though courts should not delve into whether Section 1782 materials would be admissible in a foreign proceeding, Rule 26(b) of the Federal Rules of Civil Procedure, which requires that information sought through discovery be relevant to a claim or defense, necessitates some inquiry into whether the discovery sought is relevant to the issues in the foreign proceeding. *See Certain Funds, Accounts &/or Inv. Vehicles*, 798 F.3d at 120 n.7 (noting the possible need for a threshold relevance determination "insofar as it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding"); *In re Refineria de Cartagena S.A.S.*, No. 23-MC-0455 (JPC), 2024 WL 95056, at *7 (S.D.N.Y Jan. 8, 2024) (explaining that in a Section 1782 application the "burden imposed on the applicant" to establish the relevance of the material

sought "is de minimis").

However, I do not believe that the relevance inquiry demanded by Respondents leads to their preferred outcome of a determination that the discovery sought is not relevant to and therefore not "for use" in the Malta Action or the EU Action. Petitioner has articulated why the requested discovery is relevant to the Malta Action: the materials may provide evidence of a "scheme that culminated in the sham transaction" that stripped Petitioner of its ownership interests in Fortenova Group. (ECF 13 Ex. 1, Petitioner's Mem. at 18; ECF 5, Refalo Decl. ¶ 5 (stating that the discovery sought is relevant to, among other issues in the Malta Action, why STAK viewed Petitioner as continuing to be controlled by Sberbank after Petitioner was acquired by Mr. Alketbi).) Petitioner has likewise provided an explanation of the relevance of the discovery it seeks for the EU Action: the materials may show that Akin engaged in lobbying on behalf of Fortenova Group to convince the EU Council unfairly to declare Petitioner a sanctioned entity. (*See* ECF 33, Petitioner's Reply Ex. 1, Second Lansky Decl. ¶ 20 (stating that "the circumstances surrounding the issuance of the Akin Opinion and its further use in the context of SBK ART's designation in the EU are of extreme relevance for the EU Action").)

Respondents' counterargument – that Fortenova Group and the EU Council "could not have been influenced in any way by documents that" they never saw (ECF 22, Respondents' Opp. at 13)[7] – does not persuade me that the requested documents are irrelevant to the Foreign Proceedings. Respondents' argument that documents that Fortenova Group never saw

---

[7]    As Petitioner has clarified, it is also seeking non-privileged communications between Fortenova Group and Akin; the argument that Fortenova Group could not have been influenced by documents it did not see would clearly not apply to such documents.

are necessarily irrelevant to the Malta Action (or that the EU Council never saw are necessarily irrelevant to the EU Action) proves too much. *Intel*'s requirement that the entity from which discovery pursuant to Section 1782 is sought not be a participant in the predicate foreign proceedings means that many applications pursuant to the statute seek discovery that has not been seen by the adverse party in such proceedings. Respondents cite no case suggesting that such discovery is necessarily irrelevant to the foreign proceedings, and my own research has turned up no case supporting Respondents' position.

Here, Petitioner seeks documents from Akin's files to test its theory that the Akin Opinion was not well-founded, leading the EU Council to incorrectly conclude that Petitioner should be sanctioned, which would be relevant in both the EU Action and the Malta Action, even if the EU Council and Fortenova never saw any such documents. It is somewhat harder, but not impossible, to envision non-privileged documents never seen by Fortenova Group that could provide evidence of a scheme that culminated in the Corporate Changes. Under the circumstances, I conclude that Petitioner has demonstrated that certain of the discovery it seeks meets the test of being relevant and therefore "for use" in the EU Action and the Malta Action.

Separately, it is not clear to me that one of Respondents' predicates – that documents produced to the EU Council, a government body and not an Akin client, would be exempt from production on the theory that such documents could be obtained by Petitioner from the EU Council in the EU Proceeding – is sound. While the parties submitted expert opinions taking somewhat different positions on whether, as a practical matter, taking discovery of the EU Council would be possible, the parties seem to agree that there would be significant barriers to

obtaining any such discovery. (*See* ECF 37, Petitioner's Response at 8; ECF 38, Respondents'

Response at 16-19.) And there is no requirement that a Section 1782 petitioner seek discovery

in the foreign proceeding before bringing a 1782 petition. *See In re Catalyst Managerial Servs.*,

680 F. App'x at 41. "Courts may grant § 1782 applications even where the applicant did not first

seek discovery in the foreign tribunal . . . , or where the information sought was not

discoverable under the laws of the foreign country at issue in the foreign proceeding." *In re BNP*

*Paribas Jersey Tr. Corp. Ltd.*, No. 18-MC-0047 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14,

2018) (internal quotation marks and citation omitted).

      Respondents state that although they cannot be sure without doing a complete

document collection, it is their "current understanding that no Akin timekeepers have

communicated with the EU Council in relation to Akin's work for Fortenova." (*See* ECF 38,

Respondents' Response at 11; ECF 41, Second Pees Decl. ¶¶ 14-16.) However, Respondents

have made no definitive representation that they never communicated with the EU Council in

relation to Akin's work for Fortenova. Even if it turns out that there are no such documents,

that is not a reason excuse Respondents from performing a reasonable search to confirm their

current understanding.

      For all these reasons, I conclude that Petitioner has satisfied the "for use" requirement.

      3.   The Application Is Brought by an Interested Party

      The Application is brought by Petitioner, which currently is an interested party in the

pending Foreign Proceedings; it is a plaintiff in the Malta Action and an applicant in the EU

Action. (*See* ECF 5, Refalo Decl. ¶ 3; ECF 13 Ex. 3, Lansky Decl. ¶ 8.) Respondents do not contest

that Petitioner meets this requirement.

***

Having been persuaded that the Application meets the statutory requirements of Section 1782, I turn to the discretionary factors set forth in *Intel*.

B.    The Discretionary Factors Favor Granting the Application

Petitioner argues that each of the four *Intel* Factors weighs in favor of granting the discovery requested by the proposed subpoena: (1) Akin is not a party to the Foreign Proceedings; (2) there is no indication that courts overseeing the Foreign Proceeding would reject the requested discovery; (3) the Application does not reflect an effort to circumvent foreign restrictions on discovery; and (4) the Application is "narrowly tailored to include only relevant and readily identifiable information and documents and avoid any undue burden on Akin." (ECF 13, Petitioner's Mem. at 21-24.)

Respondents take the position that three of the *Intel* Factors cut against granting the Application: whether "the person from whom discovery is sought is a participant in the foreign proceeding"; "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and whether the request is "unduly intrusive or burdensome." (ECF 22, Respondents' Opp. at 14.) Indeed, Respondents assert that those three factors are "particularly favorable to Akin in light of the Second Circuit's decision in *Kiobel v. Cravath Swaine and Moore LLP*, which strongly cautions against allowing petitioners to use Section 1782 to obtain discovery from law firms in the US in connection with their representation of foreign clients – precisely what SBK seeks to do here." (*Id.* at 9-10 (citing *Kiobel*, 895 F.3d 238, 246 (2d Cir. 2018)).)

For the reasons set forth below, I agree with Petitioner that the discretionary *Intel* Factors, on balance, favor granting the Application.

    1.   The First *Intel* Factor: Whether the Entity from Which
           Discovery Is Sought Is a Participant in the Foreign Proceeding

The first *Intel* Factor examines whether "the person [or entity] from whom discovery is sought is a participant in the foreign proceeding, in which case the need for Section 1782(a) aid generally is not as apparent." *Mangouras*, 980 F.3d at 97 (internal quotation marks and citation omitted).

        *a.  The Parties' Arguments*

Petitioner asserts that Akin is not a party to the Malta Action or the EU Action. (*See* ECF 5, Refalo Decl. ¶¶ 1, 3 & Ex. 1 (Complaint in Malta Action); ECF 13 Ex. 3 Lansky Decl. ¶¶ 8-10.)

Respondents counter that while it is technically the case that Akin is not a party to the Malta Action or the EU Action, the first *Intel* Factor weighs against discovery when "'for all intents and purposes petitioners are seeking discovery from . . . their opponent in the [foreign] litigation.'" (ECF 22, Respondents' Opp. at 15 (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004)).) Respondents take the position that the Application "seeks documents that are possessed by Akin exclusively by virtue of its representation of Fortenova," which has possession, custody, and control "of the entire universe of responsive documents," including non-privileged documents that were not originally shared with Fortenova Group. (ECF 22, Respondents' Opp. at 15.) Respondents argue that granting the requested discovery would be particularly problematic here, since Petitioner "seeks discovery from Akin's US office when all Akin's work was performed by or at the direction of its London-based lawyers." (*Id.* at 17.)

Respondents point out that granting a Section 1782 petition if the documents are undiscoverable from the client abroad disturbs the attorney-client relationship. (*See id.* at 18 (citing *Kiobel*, 895 F.3d at 246).)

Petitioner responds that it does not seek Fortenova Group "corporate documents that have been entrusted to a lawyer in connection with legal representation," but instead "the records of an independent due diligence and analysis generated by the firm"; and that Fortenova's control over Akin's documents "exists only insofar as they may be privileged." (ECF 33, Petitioner's Reply at 9-10.)[8] However, Petitioner later clarified that in making that statement, Petitioner meant only that "Fortenova could have a veto power over production only to the extent that the documents might be privileged" and that Petitioner "did not purport to make a general pronouncement as to whether under Dutch or Maltese law Fortenova is deemed as a legal matter to have constructive possession over documents not physically in its possession but held extraterritorially in the hands of a law firm." (ECF 37, Petitioner's Response

---

[8]    Petitioner also argues that the case primarily relied on by Respondents, *Kiobel*, is distinguishable because the law firm target of discovery possessed the materials in question because its client had produced them in an earlier litigation subject to a confidentiality agreement limiting their use to that litigation. (*See id.*) As Petitioner correctly notes, the Second Circuit held that ordering the firm to re-produce the documents for a different proceeding without participation from the client would have modified the confidentiality order in the prior action – an "extraordinary, and possibly unique" feature of the case that, according to Petitioner, "led the Circuit to bar Section 1782 discovery." (*Id.* (quoting *Kiobel*, 895 F.3d at 246-47).) Petitioner overstates the significance of the confidentiality order to the Second Circuit's decision, which rested on "the *Intel* Factors, the respect owed to confidentiality orders, and the concerns for lawyer-client relations," without any of those factors being elevated over the others. *Kiobel*, 895 F.3d at 248. In so doing, Petitioner neglects to fully address the other considerations animating the decision in *Kiobel,* particularly the first *Intel* Factor. That the documents at issue in the Application are not subject to a confidentiality agreement is not dispositive.

at 6-7.) At oral argument, Petitioner suggested that the requested discovery could be granted

solely in connection with the EU Action, which would moot Respondents' argument that

Petitioner is effectively seeking discovery of a party (because unlike Fortenova Group, the EU

Council is not Akin's client). However, when I pointed out that the scope of appropriate

discovery could be quite different under that new theory (for example, it is unlikely that

discovery on the Corporate Changes would be particularly relevant in the EU Action), Petitioner

did not press the issue.

>    b.  *Analysis*

Respondents are correct that courts are generally reluctant to find that the first *Intel*

Factor supports requiring a law firm to provide discovery pursuant to Section 1782 when the

firm's client or former client is the adverse party in the relevant foreign proceeding. *See, e.g.,*

*Kiobel,* 895 F.3d at 245 (citing *Schmitz,* 376 F.3d at 85); *In re Hulley Enters., Ltd.*, 358 F. Supp. 3d

331, 346-47 (S.D.N.Y. Feb. 19, 2019), *report and recommendation adopted,* 400 F. Supp. 3d 62

(S.D.N.Y. Sept. 5, 2019).

Allowing discovery from a U.S. respondent that is the agent of the petitioner's foreign

adversary when the documents sought are within the possession or control of the petitioner's

foreign adversary could "invite foreign parties to end-run directly seeking discovery from their

adversaries in the foreign proceeding by serving § 1782 subpoenas on the adversaries' U.S.-

based agents." *In re Klein*, No. 23-MC-0211 (PAE), 2023 WL 8827847, at *11 (S.D.N.Y. Dec. 21,

2023). However, there have been circumstances where courts in this District have found that

the first *Intel* Factor supported requiring production by a U.S. law firm even though its client or

former client was the adverse party in the underlying foreign proceeding or that ordering the

law firm to provide the requested discovery was appropriate notwithstanding the first *Intel* Factor. *See, e.g., In re Degens*, No. 20-MC-0237 (JGK) (RWL), 2020 WL 4252725, at *4-6 (S.D.N.Y. July 24, 2020) (granting a petitioner's request for discovery in connection with a foreign divorce proceeding from a law firm that represented the petitioner's ex-husband and his businesses because "granting the request would help the [foreign] court," the "requests were not unduly intrusive or burdensome," and any privilege issues could be addressed in "privilege logs"); *In re Lane*, No. 22-MC-0034 (LGS), 2022 WL 16737132, at *3-5 (S.D.N.Y. Nov. 7, 2022) (granting a petition seeking discovery from law firm that represented a party to the foreign litigation where the final three *Intel* Factors supported production); *Pearson v. Trinklein*, No. 21-MC-0770 (ALC) (JLC), 2022 WL 1315611, at *4-5 (S.D.N.Y. May 3, 2022) (granting a petition seeking discovery from a law firm that had represented a decedent and some of his heirs for use in a foreign dispute over the estate, even though some of the heirs were parties, when the law firm did not argue that the first *Intel* Factor cut against ordering the requested discovery); *In re Alghanim*, No. 17-MC-0406 (PKC), 2018 WL 2356660, at *4 (S.D.N.Y. May 9, 2018) (granting a petitioner's discovery request of a law firm that represented a party in the foreign proceeding because that party could not be located); *cf. In re Okean*, 60 F. Supp. 3d at 422 (noting that the Court had previously held that Okean had satisfied the first three discretionary *Intel* Factors even though the petition sought discovery of a law firm that had previously represented several parties to the underlying foreign proceeding and that the Court had therefore required the law firm to search for and produce a sampling of documents before concluding that ordering a full production would be unduly burdensome).

I believe that a significant question in analyzing the first *Intel* Factor in this matter is whether the discovery requests directed at Akin "are in substance a backdoor means of obtaining the documents of the adverse party in the foreign proceeding" – or, put another way, what entity is the "'real party from whom documents are sought.'" *In re BM Brazil 1 Fundo de Investimento em Participações Multistratégia*, No. 23-MC-0208 (JGLC) (GS), 2024 WL 555780, at *10 (S.D.N.Y. Jan. 18, 2024) (quoting *Kiobel*, 895 F.3d at 245).

"[D]ocuments in the possession of a party's attorney are deemed to be within the party's possession, custody, or control." *In re Alghanim*, No. 21-MC-0167 (LTS), 2022 WL 1423088, at *3. Law firm clients generally have the ability to obtain documents from their lawyers on demand. *See, e.g., In re Mare Shipping Inc.*, No. 13-MC-0228 (PKC), 2013 WL 5761104, at *4 (S.D.N.Y. Oct. 23, 2013) (citing cases), *aff'd sub nom. Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 Fed. App'x 6 (2d Cir. 2014). In one case seeking Section 1782 discovery from the U.S. lawyer for a party to the foreign litigation for which the discovery was sought, the Second Circuit explained that, "[a]lthough technically the respondent in the district court was [the law firm], for all intents and purposes petitioners are seeking discovery from [the client], their opponent in the [foreign] litigation." *Schmitz*, 376 F.3d at 85. The Second Circuit went on to say that "*Intel* suggests that because [the client] is a participant in the [foreign] litigation subject to [foreign] court jurisdiction, petitioner's need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" *Id.* (quoting *Intel*, 542 U.S. at 264). Similarly, in *Kiobel*, the Second Circuit reversed the district court's grant of a Section 1782 petition for discovery from a U.S. law firm where the petition

effectively sought discovery from the firm's client, which was "subject to jurisdiction in the foreign tribunal." *Kiobel*, 895 F.3d at 245.

Petitioner argues that, unlike the petitioners in *Schmitz* and *Kiobel,* it is not seeking Fortenova Group documents that happen to be in Akin's possession because of Akin's representation of its client, but instead is seeking Akin's own documents, created and obtained in connection with the Akin Opinion and Akin's lobbying efforts on behalf of Fortenova Group. (*See* ECF 33, Petitioner's Reply at 13.) And there is some support in the case law for distinguishing between the subpoenaed party's "own business records" and records of the party before the foreign court proceeding. *In re BM Brazil*, 2024 WL 555780, at *10. But the focus of this distinction is whether and if so to what extent the subpoenaed entity's records are discoverable in the foreign tribunal. *See id.* (granting discovery from "a legitimate third-party witness outside the jurisdictional reach of the [foreign court] who has potentially relevant evidence of its own, to which [the party to the foreign litigation] has no access" and finding that, "even if the Subpoenas embrace a smattering of communications" in possession of the party to the foreign litigation, "that is no reason to condemn [the petitioner's] entire request as improper"); *see also In re Batbold*, No. 21-MC-0218 (RA) (OTW), 2023 WL 2088524, at *5 (S.D.N.Y. Feb. 17, 2023) (ruling that the first *Intel* Factor supported the petitioner because "at least some of the discovery" that had been requested was "not obtainable in the foreign proceeding[ ]"); *In re OOO Promnefstroy*, No. 19-MC-0099 (RJS), 2009 WL 3335608, at *4-7 (S.D.N.Y. Oct 15, 2009) (ruling that, since the "vast majority" of the requested discovery was "also in the possession of parties to the foreign proceeding" and therefore within the jurisdictional reach of the foreign tribunal, the first *Intel* Factor cut against the petitioner).

Indeed, the Second Circuit has held that courts considering Section 1782 petitions may, in assessing the first *Intel* Factor, consider whether a foreign court could order the parties before it to produce documents. *See, e.g., Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 58 (2d Cir. 2024) (finding that consideration of whether documents were available in the foreign proceedings was appropriate and did not impermissibly impose an exhaustion requirement); *Effecten-Spiegel AG v. Lynch*, 771 F. App'x 38, 39 (2d Cir. 2019) ("With respect to the first and second *Intel* Factors, the District Court was entitled to consider the possibility that much of the requested discovery could be obtained from . . . a party to the [foreign] litigation.").

Thus, I assessed whether Fortenova Group could demand that Akin give them the documents sought by the proposed subpoenas, or any of them. When I asked Petitioner to provide information on this issue (ECF 35, Order), Petitioner resisted the question by arguing that "[t]he Second Circuit . . . has cast serious doubt on an interpretation of the first *Intel* Factor that would bring within its scope considerations of jurisdictional control over *documents* in addition to control over *parties.*" (ECF 37, Petitioner's Response at 3 (citing cases).) Petitioner does state that Fortenova Group could have veto power over Akin's production only to the extent the documents are privileged (*see* ECF 37, Petitioner's Response at 6-7), but that is a slightly different matter.

The caselaw in this jurisdiction supports the proposition that a client generally may obtain documents from its lawyer on demand. *See, e.g., Kiobel,* 895 F.3d at 245 (citing *Schmitz,* 376 F.3d at 85); *In re Hulley Enters.*, 358 F. Supp. at 346-47. Because it seems likely that many of the documents sought by the proposed subpoenas could be demanded by Fortenova Group from Respondent, the first *Intel* Factor would cut against granting the Application. However,

Petitioner is correct that that this conclusion "does not automatically foreclose § 1782 aid."

(ECF 37, Petitioner's Response at 7 (quoting *Gorsoan Ltd. v. Bullock,* 652 Fed. App'x 7, 9 (2d Cir.

2016)).)

> 2. The Second *Intel* Factor:
>    Receptivity of the Foreign Forum to Judicial Assistance

The second *Intel* Factor concerns "the nature of the foreign tribunal, the character of

the proceedings underway abroad, and the receptivity of the foreign government or the court

or agency abroad to U.S. federal-court judicial assistance." *Mangouras*, 980 F.3d at 97-98

(internal quotation marks and citation omitted). "Absent specific directions to the contrary

from a foreign forum, the statute's underlying policy should generally prompt district courts to

provide some form of discovery assistance[,]" and a court "should deny discovery on the basis

of lack of receptiveness only where it is provided with 'authoritative proof that [the] foreign

tribunal would reject evidence obtained with the aid of section 1782.'" *In re Atvos*

*Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176-77 (S.D.N.Y. 2020) (quoting

*Euromepa*, 51 F.3d at 1100-02); *see also In re Safra*, No 21-MC-0640 (GHW) (JLC), 2022 WL

3584541, at *5 (S.D.N.Y. Aug. 22, 2022) (noting that "objection to U.S. federal-court judicial

assistance would have to come from an official source, such as an agent of the [foreign]

government"); *Schmitz,* 376 F.3d at 84 (denying the discovery request where the German

Ministry of Justice and local German prosecutor asked the district court to do so).

Petitioner argues that this factor cuts in its favor because Maltese counsel states that

the use of Section 1782 to obtain discovery is not prohibited or discouraged in Malta. (*See* ECF

5, Refalo Decl. ¶¶ 6-7.) Even Respondents concede that this factor is neutral in this matter. (*See* ECF 22, Respondents' Opp. at 14.) I conclude that this factor supports granting the Application.

        3.   The Third *Intel* Factor: Circumvention of Foreign Proof-Gathering Restrictions

The third *Intel* Factor asks "whether the . . . request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," *Mangouras*, 980 F.3d at 98, which occurs if the application is an attempt to evade discovery procedures in the foreign jurisdiction, or if the application is otherwise a "bad faith endeavor to misuse Section 1782." *In re Bouka*, 637 F. Supp. 3d 74, 90 (S.D.N.Y. 2022); *see also In re Hansainvestment Hanseatische Inv.-GmbH,* 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018) (holding that the third *Intel* Factor weighed in the applicant's favor because "the Court is not persuaded that Applicants have engaged in any improper or bad faith evasion of German procedures").

        *a.   The Parties' Arguments*

Petitioner claims there is no indication that it is trying to avoid foreign restrictions on gathering evidence. (*See* ECF 13, Petitioner's Mem. at 22-23.) Maltese counsel explains that "as long as discovery is lawfully obtained in the relevant jurisdiction, Maltese courts are amenable to receiving the results of that discovery in evidence in Maltese proceedings." (ECF 5, Refalo Decl. ¶ 6.) Foreign counsel similarly states that the EU tribunal is open to discovery lawfully obtained in a foreign jurisdiction. (*See* ECF 13 Ex. 3, Lansky Decl. ¶ 16.)

Respondents argue that Petitioner has already sought and been denied the requested discovery in foreign fora and that Petitioner would be unable to obtain any of the materials it requests in the foreign proceedings due to proof-gathering restrictions – prohibitions (1)

31

against discovery being taken by a sanctioned entity, particularly for use in a proceeding, such as the Malta Action, to seek financial benefits, (2) preventing a party from obtaining discovery from the adverse party's legal counsel, and (3) preventing disclosure due to foreign privilege and confidentiality concerns. (*See* ECF 22, Respondents' Opp. at 18-19.) Respondents contend that Petitioner is not an entity seeking discovery that cannot be obtained in foreign fora but instead is seeking discovery it is prohibited from receiving in the foreign fora, which Respondents maintain amounts to an attempt to circumvent foreign proof-gathering restrictions. (*See id.* at 20-21.)

Petitioner denies that the courts in Malta Action and the EU Action rebuffed its efforts to obtain the discovery it now seeks here, saying that it never sought discovery in those fora. (*See* ECF 33, Petitioner's Reply at 11; ECF 5, Refalo Decl. ¶ 1; ECF 33-2, Second Lansky Decl. ¶¶ 11-14.) And it dismisses Respondents' other arguments with the assertion that this Court "is not tasked with exploring the nuances of admissibility in the foreign court venue" or engaging in "'speculative forays into legal territories unfamiliar to federal judges.'" (*See* ECF 33, Petitioner's Reply at 12 (quoting *Euromepa*, 51 F.3d at 1099).) Petitioner insists that, "In the absence of any evidence that [it] is seeking to game the system or circumvent conclusive rulings against it, this factor does not support Akin's defense." (*Id.*)

Respondents counter that there are EU laws that could prohibit discovery of documents provided to the EU Council and that Petitioner's efforts to require Respondents to produce such documents falls afoul of foreign proof-gathering restrictions. (*See* ECF 38, Respondents' Response at 16.) Respondents also rely on the declarations of Ross Denton, Christiaan R. Zijderveld, and Daniel Buttigieg to support their position that they would risk facing foreign law

exposure if they were required to produce documents to a sanctioned entity. (*See* ECF 22, Respondents' Opp. at 18 (citing ECF 24, Denton Decl. ¶¶ 29-32, ECF 25, Buttigieg Decl. ¶¶ 23-25, and ECF 26, Zijderveld Decl. ¶¶ 39-40).)

On the question whether Respondents would risk violating foreign law by producing documents to a sanctioned entity, one of Petitioner's foreign law experts dismisses as "completely unfounded" Respondents' argument that they face potential liability for EU and U.K. sanctions violations if they produce documents to Petitioner. (ECF 33, Petitioner's Reply at 14; ECF 33-3, Al-Karim Decl. ¶ 42.)

Respondents counter that "the declarations of its experts correctly describe the operative foreign sanctions rules and how they operate to prohibit SBK from obtaining the discovery sought by its Petition," but say that if the Court believes the issue to be unclear, that lack of clarity cuts against granting the application. (*Id.* at 13-14 (citing *In re Hulley Enters.*, 358 F. Supp. 3d at 352-53 for the proposition that the "lack of clarity [on an issue of foreign law] favors denying the section 1782 application" because granting the application might "require an American law firm with an office in a foreign country to potentially be directed to act in contravention of that foreign country's law").)

Petitioner responds:

Akin submits a throw-away line cautioning the Court that it is unclear whether sanctions prevent any party in Europe from providing a sanctioned entity with information in connection with a dispute. However, the foreign law experts for both parties before this Court agree that SBK ART retains the fundamental ability to participate in the legal process, including, but not limited to, the collection of evidence. Indeed, the EU Council itself provided disclosure to SBK ART when it turned over a copy of the Akin Opinion. As set forth in the first Lansky declaration and the Al Karim declaration, sanctioned entities have all the same rights as any litigant in any litigation, except that a court may not make funds or

economic resources available to the sanctioned entity, including at the conclusion of the case, once the parties' respective rights have been fully determined. In line with this, in none of the multiple Dutch summary proceedings between Petitioner and Fortenova has a court ever ruled that Petitioner is not entitled to information due to it being a sanctioned entity.

(ECF 42, Petitioner's Supp. Response at 2.)

   b.  *Analysis*

As noted above, "Courts may grant § 1782 applications even where the applicant did not first seek discovery in the foreign tribunal . . . , or where the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding." *In re BNP Paribas*, 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018) (internal quotation marks and citation omitted). Section 1782 does not have a "foreign-discoverability rule" that would "categorically bar a district court from ordering production of documents where the foreign tribunal or 'interested person' would not be able to obtain the documents if they were located in the foreign jurisdiction." *Fund for Protection of Investor Rights in Foreign States*, 5 F.4th 216, 231 (2d Cir. 2021) (footnote omitted), *reversed on other grounds sub nom. ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022).

Indeed, the Second Circuit has held that, "[a]bsent authoritative proof that a foreign tribunal would reject the evidence, we have explained that a court should generally allow discovery if doing so would further § 1782's goals" of "provid[ing] efficient means of assistance to participants in international litigation in our federal courts" and "encourag[ing] foreign countries by example to provide similar means of assistance to our courts." *Fund for Protection of Investor Rights in Foreign States*, 5 F.4th at 230. "[T]o demonstrate circumvention, [a respondent] must illustrate . . . that [the applicant is] engaged in a bad faith endeavor to misuse

Section 1782.'" *Refineria de Cartagena,* 2024 WL 95056, at *10 (quoting *In re Hansainvest Hanseatische*, 364 F. Supp. 3d at 251); *see also In re Batbold*, 2021 WL 4596536, at *4 (stating that bad faith is the measure for whether discovery would circumvent foreign proof-gathering restrictions).

Respondents have provided no authoritative proof that the courts in the Malta Action and the EU Action would reject evidence obtained through this proceeding or that Petitioner is acting in bad faith to try to misuse Section 1782.

Respondents make a fair point when they say that Petitioner's "blanket disclaimers" that Petitioner is not seeking privileged information fail to address whether Petitioner would be prohibited from discovering that information in the relevant foreign fora in light of foreign privilege and confidentiality law (*see* ECF 22, Respondents' Opp. at 19). But the question whether producing any of the specific documents called for by the proposed subpoenas would violate relevant foreign privilege or confidentiality law is not one that needs to be resolved now. The Second Circuit has directed courts considering Section 1782 petitions to address concerns about granting the requested discovery by issuing narrow discovery orders rather than denying the relief outright. *See Mees*, 793 F.3d at 302; *Fund for Protection of Investor Rights in Foreign States*, 5 F.4th at 231 (noting that it is preferable for courts to address issues with the scope of discovery "as they arise rather than to impose a categorical bar in the first instance"). If Respondents believe that any of the discovery sought is protected from production by foreign privilege or confidentiality law, that issue can be addressed in connection with a meet-and-confer process after the proposed subpoenas are issued, and, if necessary, through a later request for Court intervention.

And I am not persuaded that providing discovery to Petitioner puts Respondents at risk of violating foreign sanctions law. Respondents' experts speak in tentative terms about the possibility of sanctions violations because of laws against providing sanctioned entities with "funds and economic resources" (*see* ECF 24, Denton Decl. ¶¶ 29-32; ECF 25, Buttigieg Decl. ¶¶ 23-25; ECF 26, Zijderveld Decl. ¶¶ 39-40), while Petitioner' expert definitively takes the position, which makes more sense, that sanctioned entities are entitled to seek and receive discovery to defend themselves. (*See* ECF 33-3, Al-Karim Decl. ¶ 42 (citing *Mints v. PJSC Bank* [2023] EWCA Civ 1132 (English Court of Appeal decision holding that prohibition on providing "funds and economic resources" does not relate to the exercise of normal judicial functions including discovery)).) Even Respondents do not appear to be saying that there is no way for them to produce the requested materials without a risk of sanctions – they seem to say that sanctions can be avoided if U.S. lawyers do the review and production but claim it is burdensome to ask U.S. lawyers to work on the production when the underlying engagement originated in Europe. (*See* ECF 22, Respondents' Opp. at 24-25.)

Based on the analysis above, I conclude that the third *Intel* Factor weighs in favor of granting Petitioner's Application.

4. The Fourth *Intel* Factor: Whether the
   Discovery Request Is Unduly Intrusive or Burdensome

The fourth *Intel* Factor looks at "whether the request is 'unduly intrusive or burdensome,'" *Mangouras*, 980 F.3d at 98, which is measured by the standards of Rule 26 of the Federal Rules of Civil Procedure. *See In re XPO Logistics, Inc.*, 2017 WL 6343689, at *4 (citing *Mees,* 793 F.3d at 302). In this context, Rule 26 "contemplate[s] that discovery requests

be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Correios*, 2022 WL 4955312, at *8. The "proportionality analysis depends on the relevance of the information sought"; in the case of a Section 1782 petition, "relevance is assessed with regard to the foreign proceeding." *In re Catalyst Managerial Servs.,* 680 F. App'x at 39.

a.   *The Parties' Arguments*

Petitioner argues that the discovery sought would not be unduly burdensome for Akin to produce, as the requests "are tailored to a specific assignment, and a narrowly defined set of communications." (ECF 33, Petitioner's Reply at 14.)

Respondents opine that "SBK seeks to impose oppressive burdens on Akin to obtain documents that will have no relevance in any of the foreign proceedings." (ECF 22, Respondents' Opp. at 21.) Respondents point to four different reasons why the requested discovery sought is unduly burdensome: (1) requiring U.S. attorneys to produce documents obtained through representation of a foreign client chills communications between lawyers and their clients; (2) seeking discovery of materials originating from the foreign office of a U.S. law firm discourages clients from hiring the foreign office of American law firms; (3) "there will be a morass of privilege issues," and "the inevitable disputes over privilege and choice of law questions that will emerge on a document-by document basis guarantee that [responding to the proposed subpoena would] be hugely burdensome for Akin"; and (4) counsel face exposure from producing the requested documents due to Petitioner's status as a sanctioned entity. (*See id.* at 21-24.)

Petitioner responds that Respondents overstate the burdens associated with the

discovery requests. Petitioner points out that there is no general prohibition on discovery in the

U.S. from law firms with foreign offices and that Akin has made decisions about its structure

"with full awareness of the implications for its discovery obligations in the United States." (ECF

33, Petitioner's Reply at 13-14.) Petitioner accuses Akin of "protest[ing] too much" about the

burdens of addressing choice of law and privilege issues in connection with producing

documents in this matter, saying that "[t]his is the normal stuff of litigation and document

discovery, and fully within the power of Akin, as a global firm, to accomplish efficiently and

cost-effectively." (*Id.* at 14.)

Finally, Petitioner argues that, having met the burden of demonstrating that the

discovery sought is relevant, and due to the substantial financial stakes at issue, Petitioner has

demonstrated that its need for the requested discovery outweighs any claimed burdens. (*See*

*id.* at 15.)

i.    Privilege Issues

In support of the claim that the privilege issues will be overwhelming, Respondents rely

primarily on the declaration of Daniel Buttigieg for the position that documents relating to

Akin's representation of Fortenova Group are privileged under Maltese and Dutch law. (*See* ECF

22, Respondents' Opp. at 19 (citing ECF 25, Buttigieg Decl. ¶¶ 7, 12-14 and ECF 26, Zijderveld

Decl. ¶¶ 52-53, 60-67).) Respondents assert that "the requests seek categories of documents

that are likely to be almost exclusively privileged under foreign law . . ., including Akin's own

internal communications and documents, as well as those exchanged between Akin and (a) its

client, Fortenova; (b) co-counsel to Fortenova as to matters of Dutch law . . . ; and (c) multiple []

agents and advisors." (ECF 38, Respondents' Response at 13.)

> Petitioner makes the following points on the issue of privilege:

> The petition, at its core, seeks records relating to Akin's work done in connection with coming to the conclusions in the Akin Opinion, and its efforts to advocate on behalf of Fortenova (and regarding SBK ART) before OFAC and the EU Council. This is lobbying and an investigation and, by definition, not privileged. And, to the extent any instructions or communications with Fortenova in relation to the Akin Opinion were privileged, Fortenova affirmatively waived the protection when it produced the Akin Opinion in one of the Dutch proceedings against SBK ART. Petitioner does not seek exhaustive records from all aspects of Akin's relationship with Fortenova, as Akin protests. Moreover, privilege on a document-by-document basis need not be considered at this stage. It is sufficient that there is clearly some relevant and non-privileged material.

(ECF 42, Petitioner's Supp. Response at 1-2.)

### ii.   Foreign Sanctions Law

Respondents assert that the burdens of production due to the risk of sanctions

outweigh any potential relevance to the information being sought. (*See* ECF 22, Respondents'

Opp. at 24-25.)

As noted above, Petitioner's foreign law expert dismisses as "completely unfounded"

Respondents' argument that they face potential liability for EU and U.K. sanctions violations if

they produce documents to Petitioner. (ECF 33, Petitioner's Reply at 14; ECF 33-3, Al-Karim

Decl. ¶ 42.)

### iii.  Scope of the Proposed Subpoenas

On the question whether the proposed subpoenas would require Respondents to have

to review an unreasonably large volume of documents, Respondents make the following points:

1) 169 current and former Akin timekeepers have collectively billed nearly 30,000 hours to

Fortenova Group for legal services; 2) a search of just the billing partner's files from January 2019 to the present applying the terms "Fortenova" and "FNG" yielded over 90,000 documents; 3) of the documents in that sample set, 44% are uniquely possessed by Akin (communications and documents sent and received only within Akin) and 26% were shared with third parties other than Fortenova Group and the EU Council (including Fortenova's other legal counsel and advisors whose work was done at the direction of counsel); and 4) to identify non-privileged documents, Akin would have to review all documents and determine which (or which parts) are privileged. (*See* ECF 38, Respondents' Response at 2-4.)

Petitioner states: "Akin's quick math about the number of documents that would need to be reviewed based on the search term 'Fortenova' misses the point entirely. The search terms that would matter most are 'SBK,' 'Sberbank,' 'Alketbi' and 'sanction.'" (ECF 42, Petitioner's Supp. Response at 2.)

At oral argument, Respondents stated that running Petitioner's proposed search terms over the billing partner's files yielded similar results to their initial searches (over 70 thousand documents).

b.  *Analysis*

Petitioner's response to two of the burdens raised by Respondents – that the proposed subpoenas would chill communications between lawyers and their clients and discourage clients from hiring the foreign office of American law firms – is essentially that this is a risk Respondents have assumed based on the nature of their multinational firm and the way they structured their operations. (*See* ECF 33, Petitioner's Reply at 13-14.) I do not find this position to adequately address the very real policy concerns raised by the Second Circuit and courts in

this District when considering Section 1782 petitions. *See, e.g., Kiobel*, 895 F.3d at 247 (noting that "[t]he Supreme Court has stressed the need for 'full and frank communication between attorneys and their clients,' which 'promote[s] broader public interests in the observance of law and administration of justice'"); *In re Sarrio, S.A.*, 119 F.3d 143, 146 (2d Cir. 1997) (explaining that the "policy of promoting open communications between lawyers and their clients . . . would be jeopardized if documents unreachable in a foreign country became discoverable"). However, those concerns would not apply to Akin in its role as a lobbyist rather than lawyer; nor would those concerns apply to the extent that Akin's legal counsel provided business or other non-legal advice. *See, e.g., In re Degens*, 2020 WL 4252725, at *4-6 (granting a petitioner's request for discovery from a law firm that represented the petitioner's adversary in the foreign proceeding where the law firm had performed non-legal work); *In re Lane*, 2022 WL 16737132, at *3-5 (granting a petition seeking discovery from law firm that represented a party to the foreign litigation in part because the firm had done some non-legal work for the party). Even with regard to Akin acting in its role as legal counsel, those concerns are not dispositive, and limited discovery of non-privileged materials may still be appropriate after balancing the needs of Petitioner and the burdens on Respondents.

As to Respondents' argument that production would place them at risk of violating foreign sanctions law, as I explained above, I am unpersuaded. *See supra* Section II(B)(3)(b).

Petitioner is also correct that it has shown that the requested discovery is relevant and that the litigation stakes are high (*see* ECF 33, Petitioner's Reply at 15), which means that any arguments by Respondents that complying with the proposed subpoenas would be time-consuming or expensive because of the "morass of privilege issues" and "inevitable disputes

41

over privilege and choice of law questions" are unlikely to carry the day. *See, e.g., In re BM Brazil*, 2024 WL 555780, at *17 (noting that the assertion that production would require a "labor-intensive search of thousands of documents some of which may have to be redacted" was not sufficient to demonstrate undue burden in a high-stakes commercial litigation); *In re Valitus, Ltd*., No. 20-MC-91133 (FDS), 2020 WL 6395591, at *9 (D. Mass. Nov. 2, 2020) (holding that compliance with the subpoena would not be unduly burdensome for a respondent that "operate[d] a highly sophisticated worldwide enterprise").

Here, I directed Respondents to address "the specific nature of the burdens that Respondents would face if the Court were to permit issuance of subpoenas for discovery relating to non-privileged materials either (i) 'uniquely possessed by Akin' or (ii) shared only 'with third parties other than' Fortenova Group and the European Union Council." (ECF 35, Order.) Akin responded that for the set of documents from the files of the billing partner that contained certain search terms, 44% of the documents are uniquely possessed by Akin and 26% were shared with third parties other than Fortenova Group and the EU Council; and that the "vast majority of documents in the first category would be protected from disclosure, in whole or in part, by attorney-client privilege and/or the attorney work product doctrine, and the second category may be similarly protected depending on who the third party was with whom the materials were shared." (ECF 38, Respondents' Response at 2-4.) I do not believe that this qualified representation is sufficient to conclude that the burden on Respondents of providing relevant non-privileged discovery is disproportionate to the needs of the Foreign Proceedings, particularly if the required discovery is limited in accordance with my recommendations below.

To the extent production in this matter raises privilege issues, it is likely that they can be addressed through narrowing the scope of the proposed subpoena and relaxing the requirements for a privilege log – which are preferable to simply recommending that the Application be denied. *See Mees*, 793 F.3d at 302 (explaining that it is better for a court to issue "a closely tailored discovery order rather than . . . simply deny[ ] relief outright"). While I recognize that for a law firm to create a privilege log for its own document production would require substantial work, the burden would be reduced if the parties agreed that Respondents could use an appropriately simplified privilege log. *See* Local Civil Rule 26.2.

> ### c.   Suggested Limitations on the Scope of the Proposed Subpoenas

At oral argument, I stated that I was inclined to recommend granting some discovery and asked the parties if they wanted my thoughts on the reasonable scope of discovery before they met and conferred. They said that they wanted my guidance, without prejudice to making any appropriate objections to my report and recommendation and, on Respondents' part, to seeking reimbursement for costs of any required production.

I believe that Petitioner has shown that paper discovery on the following topics is likely to be relevant to the Malta Action and/or the EU Action: (1) Mr. Alketbi's acquisition of Petitioner; (2) the Akin Opinion; and (3) the Corporate Changes. (A deposition on those topics plus Respondents' document production would similarly be relevant.) My view is that the relevant period for document production should be from February 1, 2022 (shortly before Mr. Alketbi's acquisition of Petitioner) to December 31, 2023 (shortly after the sale of MidCo), which seems to be the period during which there are most likely to be responsive documents on those topics. Petitioner has not persuaded me that the other topics listed in the proposed

subpoenas (over the longer period) are likely to be particularly relevant to the Foreign

Proceedings, which involve whether Petitioner was improperly sanctioned by the EU and

whether Petitioner was improperly deprived of its voting rights and thereby harmed by the

Corporate Changes. I expect that Respondents would be able to identify the professionals who

worked on those three matters, meaning that it seems unlikely Respondents would have to

search all timekeepers who billed time to Fortenova Group matters.

Respondents' opposition to the Application suggests another possible limitation on the

scope of the proposed document subpoenas: production of non-privileged materials either

"uniquely possessed by Akin" or shared only "with third parties other than" Fortenova Group

and the EU Council. (*See* ECF 22, Respondents' Opp. at 12-13, 15-21.) As noted above, I do not

believe that documents shared by Respondents with the European Council (if any) are

protected from production. I therefore recommend granting the Application, with the proposed

subpoenas narrowed to cover the topics listed above over the shorter timeframe, and with

production limited to non-privileged materials that are uniquely possessed by Akin or that have

been shared with third parties other than Fortenova Group. To the extent that Respondents

believe that any such responsive documents are privileged, they should meet and confer with

Petitioner and place them on a privilege log; I encourage the parties to agree to a simplified

privilege log. *See* Local Civil Rule 26.2.

While Petitioner cites caselaw holding that Section 1782 discovery is not precluded even

when a party to the underlying foreign case possesses some of the documents (*see* ECF 37,

Petitioner's Response at 7-8), I believe that in this matter, it is appropriate to exclude from the

required discovery any documents that were shared with Fortenova Group; given the burdens

associated with the production due to the volume of documents held by Respondents, I conclude that this limitation on the required discovery is warranted due to the proportionality requirement.

I do not believe that at this stage I need to address the question whether documents shared with Fortenova Group's foreign legal counsel and advisors are, as a general matter, privileged under relevant foreign law. I encourage the parties to meet and confer on this topic as well as on an appropriately simplified privilege log. *See* Local Civil Rule 26.2. If necessary, the parties can come back to the Court with any discovery disputes they are unable to resolve after meeting and conferring.

Based on the analysis above, I conclude that the fourth *Intel* Factor supports granting the Application, with narrowed proposed subpoenas.

*** 

I conclude that the first *Intel* Factor cuts against granting the Application, while the final three *Intel* Factors favor granting the Application. In deciding whether the *Intel* Factors, on balance, support granting the Application, I am mindful that Second Circuit has said that "the Intel factors are not to be applied mechanically" and that courts "should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel*, 895 F.3d at 245. In my view, this admonition means that I should not recommend denying the Application reflexively, merely because Akin is a law firm retained by a party to the foreign proceeding. Indeed, Courts in this District have required law firms to provide Section 1782 discovery even when the first *Intel* Factor favored the respondents if the other three *Intel* factors favored the

petitioners. *See, e.g., In re Degens*, 2020 WL 4252725, at *4-6; *In re Lane*, 2022 WL 16737132, at *3-5 (S.D.N.Y. Nov. 7, 2022).

In this matter, I think a "pertinent issue arising from the facts of the particular dispute" is that Akin drafted the Akin Opinion, which a Fortenova Group entity provided to a Dutch court to contest Petitioner's right to exercise its voting rights and possibly also to the EU Council in connection with the Council's consideration of whether to sanction Petitioner; the Akin Opinion stated that documents provided by Mr. Alketbi explaining the purchase were (1) "insufficient to confirm" that his acquisition demonstrates that Petitioner should "no longer be[ ] subject to the asset freeze restrictions imposed on its purported (former) parent company Sberbank" and (2) "indicative of criminal sanctions breaches having been committed by EU persons . . . ." (ECF 13 Ex. 1, Petitioner's Mem. at 7-8.) My view is that Fortenova Group's affirmative use of the Akin Opinion by sharing it with the Dutch court and possibly the EU Council moves Akin's work on the Akin Opinion out of the category of legal advice provided by legal counsel; under U.S. law, if it applies, it is possible that Fortenova Group's public use of the Akin Opinion effected a subject matter waiver of any privilege attaching to documents relating to the Akin Opinion (and by extension to documents concerning Mr. Alketbi's acquisition of Petitioner). *See, e.g., In re Leslie Fay Cos., Inc. Sec. Litig.*, 161 F.R.D. 274, 283, 284 (S.D.N.Y. 1995) (holding that the submission to the Securities and Exchange Commission of an accounting report prepared by the company's audit committee and outside counsel waived attorney-client privilege over the report and its underlying documents, to the extent that the underlying documents contained no legal analysis or advice beyond what was discussed in the report). Even if there were no such waiver, the public use of the Akin Opinion means that the work relating to the Akin Opinion and Mr.

Alketbi's acquisition of Petitioner becomes something more like the discoverable work of a lawyer acting as a lobbyist or business advisor.

One of the concerns raised by Respondents in connection with the first *Intel* Factor is that it is problematic to order production of "documents that are possessed by Akin exclusively by virtue of its representation of Fortenova," especially if the documents are undiscoverable from the client abroad, because requiring production would disturb the attorney-client relationship. (ECF 22, Respondents' Opp. at 15.) However, where, as with documents relating to the Akin Opinion and Mr. Alketbi's acquisition of Petitioner, the discovery does not seek materials protected on the basis of privilege or the work product doctrine, requiring production would not disturb the attorney-client relationship. Likewise, one of the burdens raised by Respondents in connection with the fourth *Intel* Factor – that the proposed subpoenas would chill communications promoting compliance with the law between lawyers and their clients – is not in my view applicable to Akin's work relating to the Akin Opinion or Mr. Alketbi's acquisition of Petitioner.

While it may be that most documents relating to the Corporate Changes will be privileged or reflect attorney work product, it seems plausible, given Akin's apparently active role in Fortenova Group's corporate maneuvers relating to Petitioner, that Respondents could have a meaningful number of non-privileged documents relating to the Corporate Changes as well. I believe that Respondents should be required to perform a reasonable search for such documents, for the same reasons described above in connection with my analysis of documents relating to the Akin Opinion and Mr. Alketbi's acquisition of Petitioner.

In making my recommendation, I am also guided by the Second Circuit's instruction that, "[i]n exercising its discretion, a district court should consider the 'twin aims' of § 1782: (1) providing efficient means of assistance to participants in international litigation and (2) encouraging foreign countries to provide such assistance to our courts." *Mees,* 793 F.3d at 297-98. I believe that authorizing limited discovery better serves those twin aims than denying all discovery requested in the proposed subpoenas.

For the foregoing reasons, I conclude that the discretionary factors support granting the Application, with narrowed proposed subpoenas. To the extent that, in the course of responding to the narrowed subpoenas, Respondents find that the burdens are undue, based on a high number of documents responsive to a particular request that need to be reviewed for privilege or a high proportion of documents that are protected from production based on privilege, Respondents may seek relief from the Court if necessary after meeting and conferring with Petitioner.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Application be GRANTED and that Petitioner be authorized to serve on Respondents subpoenas that are modified as described herein.

DATED:    July 30, 2024
          New York, New York

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this report and recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).